UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

LINDA BUCZAKOWSKI,                                          **AMENDED**
                                                           **COMPLAINT**
                            Plaintiff,

-against-                                                  Civil No. 18-cv-330

CROUSE HEALTH HOSPITAL INC.; JOHN
BERGEMANN; LISA DITTRICH; CATHERINE
GREENIA; and DOROTHY DICARLO;

                            Defendants.
_____

DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38 of the Federal Rules of Civil Procedure ("FRCP"), the Plaintiff

hereby demands a jury trial of all issues so triable.

The Plaintiff, LINDA BUCZAKOWSKI, by her attorneys, Bosman Law LLC, A.J.

Bosman, Esq., for an Amended Complaint against the Defendants, alleges as follows:

**INTRODUCTION**

1. This action is brought pursuant to the Age Discrimination in Employment Act

(ADEA);  the Americans with Disabilities Act (ADA); the Family Medical Leave Act (FMLA);

New York Human Rights Law (NYHRL); ERISA; Breach of Contract; and New York common

law. Plaintiff seeks money damages as well as declaratory and equitable relief, including

injunctive relief, to redress the deprivation by Defendant of rights secured to Plaintiff by the

aforementioned laws of the United States and the State of New York.

## JURISDICTION AND VENUE

2. Jurisdiction lies with this court pursuant to 28 U.S.C. § 1331. Venue is proper in the United States District Court for the Northern District of New York pursuant to 28 U.S.C. § 1391. This is a related case to Buczakowski v. SEIIU, NDNY, CIV NO 18-cv-812-LEK-DEP.

## PARTIES

3. Plaintiff, LINDA BUCZAKOWSKI, is a resident of the State of New York and presently resides at 116 Woods Avenue S. Syracuse, NY 13206. At all times relevant herein, Plaintiff was an employee until her unlawful and constructive discharge, and thereafter a former employee of Defendant Crouse Hospital entitled to certain medical insurance benefits pursuant to COBRA and Defendant Crouse Hospital's contracts, rules and procedures.

4. The Defendants are CROUSE HEALTH HOSPITAL, INC. and is sued for the unlawful acts and/or omissions of its corporation, its officers, agents and employees. The CROUSE HEALTH HOSPITAL, INC. is a corporation with its principal place of business at 736 Irving Avenue Syracuse, NY 13210.

5. Defendants JOHN BERGEMANN, LISA DITTRICH, CATHERINE GREENIA, and DOROTHY DICARLO, were at all relevant times herein the Director of Human Resources, Plaintiff's supervisors, and Plaintiff's union representative.

## STATEMENT OF THE FACTS

6. Plaintiff was hired by the Defendant Crouse Hospital on or about October, 2012. Plaintiff worked most recently as a business office clerical support staff, a/k/a "float" worker in the business office. Plaintiff also worked in the Emergency Room and prompt care in patient access from October 2012 through October 2013. It was communicated to Plaintiff that her

supervisor, Colleen did not like working with her because of her age.

7. On or about July 10, 2017, Plaintiff filed with the Equal Employment Opportunity Commission (EEOC) charges of discrimination against the Defendants alleging, inter alia, discrimination on the basis of age and disability as well as retaliation for complaining of discrimination, alleging an unlawful discriminatory practice(s) relating to employment. Plaintiff alleged she was discriminated and retaliated against in violation of the law.

8. Said charge was dually filed with the New York State Division of Human Rights pursuant to a workshare agreement that same date. Plaintiff was thereafter issued a right to sue letter.

9. A copy of said EEOC Right to Sue letter was received by Plaintiff on or about December 15, 2017.

10. Defendants JOHN BERGEMANN, LISA DITTRICH, CATHERINE GREENIA, and DOROTHY DICARLO at all relevant times herein aided and abetted the unlawful discrimination, policies, and retaliation through their conduct, by inter alia, coordinating and/or committing said acts or failing to intervene to cease said acts against Plaintiff.

11. During the course of her employment, Plaintiff always performed her duties in a satisfactory and fully competent manner. Plaintiff, on or about June 2016 attended to a medical appointment due to back pain and was subjected to a failure to diagnose vertebral fractures by the medical staff at Crouse Hospital, which on information and belief, was and is self insured to provide health insurance service and benefits to employees and former employees.

12. When Plaintiff was finally x-rayed, she underwent surgery and was diagnosed with

cancer. Because Plaintiff was given said diagnosis and treated, she became disabled within the meaning of the ADA as she had a serious medical condition and was prevented from performing such of those work duties as to qualify her for FMLA and medical leave.

13. Upon information and belief, Plaintiff was granted FMLA leave. As the policy of the Defendant Crouse Hospital and the law allows 12 weeks of FMLA leave per year, Plaintiff was entitled to same on a "rolling" basis beginning on or about August, 2016 and continuing through the date of Plaintiff's constructive termination on or about June 5, 2017. The rolling 12-month period was measured backward from the date Plaintiff used FMLA leave (the remaining leave was the balance of the 12 weeks not used during the immediately preceding 12 months)

14. Plaintiff was not provided 12 weeks of unpaid FMLA leave as the Defendant Crouse Hospital used and applied Plaintiff's sick and vacation time concurrently with lawfully allowed unpaid FMLA leave. Plaintiff returned to work following her first FMLA medical absence and was able to perform the essential functions of her job.

15. Following surgery in January, 2017, Plaintiff received a release to return to work April 17, 2017, and she was again eble to perform the essential functions of her job. Previous to her return at that time, Plaintiff was warned and threatened that if she did not return to work that she would be terminated due to the lack of available FMLA leave. Defendants did not designate what amount or which portion of her FMLA leave was attributed to the previous 12 month period. Plaintiff was entitled by law to be returned to her same position, seniority, benefits and privileges upon her return from FMLA leave. Plaintiff was also entitled to return to her position without retaliation for using FMLA leave, her health insurance, or her complaints of disparate treatment on the basis of her disability.

-4-

16. As a disabled employee, Plaintiff was also entitled to accommodations and following a January 2017 bone marrow transplant, requested a parking space closer to her work, documenting private health information protected by HIPAA and in support of the ADA request presented to Defendant Bergemann, Director of Human Resources. Shortly after making the parking request, Plaintiff received an email from Defendant Bergemann referencing Plaintiff's disabling health condition and expressing doubt about Plaintiff being able to work in spite of the release she received from her treating physicians.

17. On or about May 4, 2017 Plaintiff and her three co-workers were addressed at a meeting with the whole department present in which Defendant Dicarlo first advised the float positions were being terminated and then changed her statement upon interjection by the union representative and clarified that the float position description was being eliminated, not the position. Defendant Dicarlo advised the three younger and less senior co-workers what their new position would be and Plaintiff was excluded. When Plaintiff made inquiry about her position, Plaintiff was admonished "to be patient", that her position was still in "formulation" and her new float job description was not "completely ready". Thereafter Plaintiff's three younger (two less senior) and not perceived as disabled co-workers were assigned new job descriptions, without bidding or bumping, in their same positions in business office and Plaintiff was not.

18. Plaintiff was excluded from the assignment of the preferred positions given to her co-workers by Defendant Dicarlo because of her age, disability, use of FMLA leave, and/or perceived disability. Defendant Dicarlo invited questions from Plaintiff's co-workers and specifically stated "except Linda" and excluded Plaintiff, subjecting Plaintiff to discrimination, humiliation and disparagement.

19. Plaintiff later was asked by her union representative to meet with her and Plaintiff was not informed that Defendant Bergemann would also be present. Defendant Bergemann thereafter raised and referenced in the presence of a third party Plaintiff's specific medical condition and questioned as to whether she should be working there. Further, Defendant Bergemann stated to Plaintiff in words or substance that she should take Social Security Disability, retire, and "apply for Medicare" in the presence of that third party. Plaintiff objected and advised Defendant Bergemann that her medical condition had nothing to do with her employment and she would not be leaving.  Plaintiff remained fully capable of performing essential functions of her job. Plaintiff did not consent to Defendant Bergemann disclosing any of Plaintiff's medical information provided in support of her request for FMLA or a parking space and Defendant Bergemann negligently, recklessly and/or deliberately violated Plaintiff's medical privacy rights. Defendant Bergemann also made such statements in retaliation for Plaintiff's use of FMLA and ADA requests for accommodation in parking nearer Plaintiff's office workplace.

20. Plaintiff was again admonished to be patient by the Union representative present and falsely advised again that her position had NOT been eliminated and that they just needed time to complete the description. She later acknowledged that HR (Bergemann) was usually not involved unless there was a termination.

21. Plaintiff sought thereafter to speak to Defendant Dicarlo about the matter and Defendant Dicarlo's demeanor was markedly changed, hostile and cold to Plaintiff. Plaintiff inquired if Defendant Dicarlo was aware that Defendant Bergemann had intended to speak to Plaintiff and Dicarlo curtly stated nothing can be done without HR approval, i.e., that she had knowledge of the exchange and meeting.

22. Thereafter, Plaintiff's direct supervisor Ms. Greenia, also would not discuss Plaintiff's position with her and abruptly began to treat Plaintiff differently and distantly, stating that she would not discuss it with Plaintiff. Such conduct evinced an awareness of facts surrounding the unlawful displacement of Plaintiff and she was subjecting her to discrimination.

23. Such conduct by Defendants Bergemann, Dicarlo, and Greenia was discriminatory and retaliatory, unwarranted and hostile to Plaintiff, causing her distress and depriving her of the security of her job due to her use of and past need for FMLA leave, disability and perceived disability and the request for accommodations.

24. Plaintiff was also excluded from all but the introductory "Soarian" training while her younger, non-disabled co-workers even with less seniority were assigned full training providing better and more numerous employment opportunities. Such treatment was discriminatory, retaliatory, hostile and degrading to Plaintiff on account of her disability or perceived disability.

25. Defendant Greenia thereafter asked Plaintiff for another meeting and admitted in words and substance that there was no rewritten job description for Plaintiff. Defendant Greenia knew or should have known such elimination of plaintiff's job was retaliatory, discriminatory and in violation of Plaintiff's contract rights. Defendant Greenia knew that such action subjected Plaintiff to humiliation, degradation, distress, and hostile work environment by deceiving Plaintiff and discriminating against her as disabled, perceived to be disabled, and/or requesting accommodation.  When Plaintiff asked to leave the meeting as she was beginning to cry, Defendant Greenia abruptly and forcefully told Plaintiff "NO". Plaintiff was further humiliated and thereafter only reluctantly permitted and allowed to leave when Defendant Greenia stated that she could go.

26. Plaintiff's workplace also became overtly hostile. Most of Plaintiff's co-workers stopped speaking to her, would avoid her, or refuse to engage beyond a curt "Hi". Said treatment was a direct result of the discriminatory and retaliatory treatment Plaintiff received by supervisors and human resources as well as her union.

27. On or about May 11, 2017, Defendant Dicarlo called another meeting and she announced she was changing the "layout" of the office and that Defendant Greenia would direct where Plaintiff and her co-workers would be placed. Shortly thereafter Defendant Greenia came to Plaintiff's work area and began speaking with Plaintiff's co-workers while patently, overtly and completely ignoring Plaintiff. Further Defendant Greenia's attitude became increasingly unfriendly and hostile, deliberately not providing work assignments to Plaintiff while providing such assignments to her co-workers in her place.

28. Plaintiff thereafter sought to speak to Defendant Dicarlo about her position. Defendant Dicarlo appeared hostile and upset with Plaintiff and announced, admitting to her that she had eliminated Plaintiff's position, and she would be meeting with HR to determine "bidding" outside Plaintiff's department. Plaintiff had no desire to bid or "bump" as it compromised her job security and schedule and seniority. Plaintiff inquired to Defendant Dicarlo about the four existing float positions but she stated she had to go but instead thereafter followed Plaintiff to her desk, causing Plaintiff embarrassment, humiliation, and fear of Defendant Dicarlo.

29. Plaintiff reported to and sought to speak with HR and Defendant Bergemann, on or about May 11, 2017, complaining about the discriminatory treatment, contract violations, and hostile work environment Plaintiff was suffering. Plaintiff also protested and complained of his

unlawful disclosure of private medical information and stating in words and substance that she did not deserve such treatment. Defendant Bergemann retaliated by escalating the matter in disregarding Plaintiff's complaints and refused to acknowledge the deception and treatment of Plaintiff.

30. Defendant Bergemann solicited Defendant Dittrich as she walked by and she thereafter injected herself into the conversation, falsely accusing Plaintiff of being loud and not listening.  Defendants' lies to Plaintiff about her position unwillingness to entertain her complaints frustrated Plaintiff and she left to avoid their treatment and to go attend scheduled training.

31. Thereafter Defendant Dittrich came to Plaintiff and removed her from training, informed her she was being sent home in the presence of a union rep, and not to return until Monday.  Defendant Dittrich and the union rep stated to Plaintiff that if she did "not leave quietly" they would call security, again subjecting Plaintiff to extreme emotional distress, further humiliation, degradation, and discriminatory/retaliatory conduct.

32. When Plaintiff returned to work the following Monday she was again called into a meeting by Defendants Greenia and Dittrich. Defendant Dittrich falsely stated in the presence of Defendant Greenia that she advised Plaintiff "not to return to work". Plaintiff was then again humiliated and ejected from her workplace, told by Defendant Dittrich there would be a meeting at some point, to leave and not return to work under any circumstances. Such conduct was so extreme as to create a hostile work environment.

33. Defendant Dittrich then called Plaintiff and instructed her to appear at a disciplinary meeting on Wednesday May 17th where Plaintiff was falsely charged with a "class c" offense for

disrespecting Bergemann when she complained of his treatment. Plaintiff was further advised that the vacation time Plaintiff had saved to attend doctor appointments was already used, without her permission, as a penalty and to cover time she had been removed from work, leaving Plaintiff without said leave for necessary medical appointments and treatments. Defendant Dittrich and Bergemann knew or should have known that the unpermitted use of Plaintiff's leave was discriminatory, retaliatory, a breach of her contractual rights and designed to push Plaintiff from her job and demoralize Plaintiff further.

34. Plaintiff was also instructed that she would not retain her position but would have to "bump" or bid on a posted position. Plaintiff's non-disabled, with less seniority, and younger co-workers were not displaced or required to "bump". Plaintiff was told she had to "bump" when her co-workers did not. The terms of the "bumped" position would only provide three days to "qualify".  Said bumping was clearly a shallow pretext to disqualify Plaintiff, that management would decide she was not qualified for the "new" position, and she would lose her employment due to elimination of her earlier position, FMLA medical appointments and treatment without the seniority, available leave, and work schedule previously held by Plaintiff. Said conduct violated Plaintiff's contractual and statutory rights.

35. On or about June 5, 2017, Plaintiff appeared for the "patient access representative" position she was forced to "bump" into but was immediately dragged yet again to another "meeting".  Plaintiff was advised that she would not have time available for her medical appointments and would be subject to disciplinary action if she missed work as a result. Plaintiff's workplace became so permeated with such severe hostility, discrimination and retaliation as to make it impossible to work at Plaintiff's place of employment. Defendants'

conduct, both collectively and individually, constructively terminated Plaintiff's employment and Plaintiff resigned in protest as she could endure no more. Upon information and belief, Defendants' conduct was motivated by Plaintiff's usage of medical benefits provided by Crouse. In or about May 2017, Plaintiff was advised by Amy Volcano that she learned from her manager Carol Perfetti that Crouse administration receives reports of employee health insurance usage and managers were directed to scrutinize these employees using measures of FMLA and/or medical benefits. Defendant Dicarlo assumed the position as manager from Perfetti and on information and belief have the same access to reports of Plaintiff's use of medical benefits and/or FMLA. Defendant Bergemann also suggested to Plaintiff that she apply for Medicare.

36. Both before and after said termination, Plaintiff made inquiry as to the availability and terms of COBRA coverage for her medical needs and was advised that she could and would receive equivalent medical insurance coverage through COBRA. On information and belief, Defendant Crouse Hospital is obliged under law, ERISA, and by contract to provide continuing medical insurance coverage in a manner consistent with policies, procedures and past practices. Defendant Crouse Health Hospital refused to provide Plaintiff with a copy of any health policy or explanation of benefits, directed others not to provide said information, subjected her to changes and fluctuating prices in co-pays, coverage, and costs without basis. Such changes resulted in delay in treatments and extreme emotional distress as costs associated with her medical treatments and prescribed chemotherapy were unavailable due to lost income and she was left without explanation or recourse from Defendants. On information and belief, Defendants refused to provide plaintiff equal coverage to that she had prior to her termination and in violation of her rights under COBRA, ERISA, and contractual rights.

37. Throughout the course of these events, Plaintiff repeatedly requested assistance from her Union representatives and was denied adequate representation, misled, deliberately stonewalled and/or denied fair representation by said Union.

38. The Defendants Crouse Health Hospital Inc., violated and/or breached the 2016 - 2019 Union contract with Plaintiff in that she was denied the benefits and privileges thereunder, including, but not limited to:

a) Article 9 -NON-DISCRIMINATION: prohibiting discrimination on the basis of disability or age.

b) Article 11 - HOURS OF WORK, SCHEDULING & PREMIUM PAY: Section 11.16 Floating.

c) Article 17 - POSTING AND FILLING POSITIONS: Sections 17.1, 17.7, and 17.8.

d) Article 18 - POSTING AND FILLING POSITIONS: Sections 18.1 - 18.8

e) Article 20 - VACATION: Sections 20.8, 20.10

f) Article 23 - PERSONAL TIME: Sections 23.1 - 23.7

g) Article 26 - MEDICAL AND LIFE INSURANCE: Sections 26.4; 26.13

h) Article 28 - LEAVE OF ABSENCE WITHOUT PAY: Sections 28.1 -28.18

i) Article 30 - LAYOFF AND RECALL: Sections 30.1 - 30.7; 30.11

j) Article 31 LAYOFF AND RECALL: Sections 31.1 - 31.5; 31.7

k) Article 33 - DISCIPLINE AND DISCHARGE: Sections 33.1 - 33.3; 33.5 - 33.6

l) Article 38- QUALITY CARE: Sections 38.10

m) Article 39 - ADJUSTMENTS TO THE BARGAINING UNIT: Section 39.6

n) Article 43 - LABOR-MANAGEMENT MEETINGS: Sections 43.3 -43.7

o) Article 46 - SEVERANCE: Article 46.1 - 46.2

p) Article 52 - PAST CONDITIONS: Sections 52.2- 52.4

q) Health Savings Account as provided under ERISA

r) Good Faith and Fair Dealing

39. As a direct and proximate result of Defendant's actions and retaliation, Plaintiff has suffered, and continues to suffer, physical injury and harm, and a deprivation of her rights under the law, extreme mental anguish, and financial loss.

40. Some of the damages suffered by Plaintiff as a result of the aforementioned wrongs, acts, and violations of Defendants include, but are not limited to:

(a) Plaintiff has been deprived of income in the form of wages, benefits, promotional opportunities and job assignments;

(b) Plaintiff has suffered physical harm in the form of stress, tension, headaches, stomach aches, sleeplessness, nervousness, anxiety, fear and dread, extreme anxiety, embarrassment, humiliation, degradation, depression, insomnia, anger, family discord and dysfunction and pain;

(c) Plaintiff has been forced to suffer severe emotional distress, mental anxiety, depression, and psychological trauma;

(d) Plaintiff has been denied equitable employment compensation, equitable employment terms and conditions and privileges of employment;

-13-

(e) Plaintiff has been subjected to damage to her good name, humiliation, indignity and shame;

(f) Plaintiff has suffered injury to her family and community relations amongst his peers and co-workers;

(g) Plaintiff has been caused to incur legal fees and expenses and will incur additional legal fees in the future, to protect Plaintiff's rights and interests from the wrongful and unlawful actions of the Defendants herein;

(h) Plaintiff has suffered deprivation of his property and liberty, invasion of her privacy and has otherwise suffered deprivation of her human, civil and Constitutional rights in violation of the laws of the United States and the State of New York;

(i) Plaintiff has been otherwise damaged.


## AS AND FOR A FIRST CAUSE OF ACTION

## UNDER THE ADEA

41. Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 40 as if set forth fully herein.

42. Plaintiff is an employee as defined in the ADEA in that she is over the age of 40.

43. Defendant Crouse Hospital is an employer as defined in the ADEA in that it employs more than twenty (20) employees.

44. Plaintiff was subjected to adverse employment actions in that she was subjected to the elimination of her position and subsequent reassignment of job duties; denial of benefits and

accommodation; disciplined; treated hostilely; and constructively terminated.

45. Plaintiff's age was a determining factor in said adverse employment actions.

46. Plaintiff was harmed and injured by reason of Defendant's discriminatory and retaliatory acts, as set forth more fully above.

## AS AND FOR A SECOND CAUSE OF ACTION

## UNDER THE NYS HUMAN RIGHTS LAW

47. Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 46 as if set forth fully herein.

48. Plaintiff is an employee as defined in the Human Rights Law in that she is over the age of 18.

49. Defendant Crouse Hospital is an employer as defined in the Human Rights Law in that it employs more than four (4) employees. Additionally, Defendants Bergemann, Dittrich, Greenia, and DiCarlo qualify as employers because they had the authority to do more than mere carry out personnel decisions made by others and/or are aiders or abetters.

50. Plaintiff was subjected to adverse employment actions in that she was subjected to the elimination of her position and subsequent reassignment of job duties; denial of benefits and accommodation; disciplined; treated hostilely; and constructively terminated.

51. Plaintiff's age was a determining and/or motivating factor in said adverse employment actions.

52. Plaintiff was harmed and injured by reason of Defendant's discriminatory and retaliatory acts, as set forth more fully above.

## AS AND FOR A THIRD CAUSE OF ACTION

## UNDER THE ADA

53. Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 52 as if set forth fully herein.

54. Plaintiff is an employee as defined in the ADA in that she has and/or had a physical impairment (cancer) which substantially limits a major life activity.

55. Defendant Crouse Hospital is an employer as defined in the ADA in that it employs more than twenty-five (25) employees.

56. Plaintiff was qualified for the positions at issue and able to perform their essential functions with reasonable accommodation in the form of periodic leave.

57. Plaintiff was subjected to adverse employment actions in that she was subjected to the elimination of her position and subsequent reassignment of job duties; denial of benefits and accommodation; disciplined; treated hostilely; and constructively terminated.

58. Plaintiff's disability was a determining and/or motivating factor in said adverse employment actions.

59. Plaintiff was harmed and injured by reason of Defendant's discriminatory and retaliatory acts, as set forth more fully above.

## AS AND FOR A FOURTH CAUSE OF ACTION

## UNDER THE HUMAN RIGHTS LAW

60. Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 59 as if set forth fully herein.

61. Plaintiff was subjected to adverse employment actions in that she was subjected to the

elimination of her position and subsequent reassignment of job duties; denial of benefits and accommodation; disciplined; treated hostilely; and constructively terminated.

62. Plaintiff's disability and/or perceived disability was a determining and/or motivating factor in said adverse employment actions.

63. Plaintiff was harmed and injured by reason of Defendant's discriminatory and retaliatory acts, as set forth more fully above.

## AS AND FOR A FIFTH CAUSE OF ACTION

## UNDER THE FMLA

64. Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 63 as if set forth fully herein.

65. Plaintiff is an eligible employee as defined by the Family Medical Leave Act as working at least 1250 hours in a year at a worksite with at least fifty people in a 75-mile radius.

66. Defendant Crouse Hospital is an employer under the FMLA because it is an industry affecting commerce which employs fifty or more others for each workday for twenty or more weeks.

67. At all times relevant hereto, Plaintiff suffered a serious health condition as defined in the FMLA. Under the FMLA, a physical or mental condition that involves in patient care or continuing treatment renders an employee entitled to FMLA leave.

68. Plaintiff was denied leave and/or retaliated for taking such leave as provided by the Defendant Crouse Hospital.

69. Plaintiff was harmed and injured by reason of Defendant's discriminatory and retaliatory acts, as set forth more fully above.

## AS AND FOR A SIXTH CAUSE OF ACTION

## UNDER THE FMLA

70. Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 69 as if set forth fully herein.

71. Plaintiff engaged in protected activity under the FMLA in that she requested and received FMLA leave.

72. Plaintiff was subjected to adverse employment actions in that she was subjected to the elimination of her position and subsequent reassignment of job duties; denial of benefits and accommodation; disciplined; treated hostilely; and constructively terminated.

73. Plaintiff's FMLA leave was a determining and/or motivating factor in said adverse employment actions.

74. Plaintiff was harmed and injured by reason of Defendants' discriminatory and retaliatory acts, as set forth more fully above.

## AS AND FOR A SEVENTH CAUSE OF ACTION

## UNDER THE ERISA

75. Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 74 as if set forth fully herein.

76. At all times relevant hereto, Plaintiff was a participant or beneficiary of an employee benefits plan governed by ERISA.

77. Defendant Crouse Hospital is a self-insured provider of benefits, including health insurance and health savings accounts, governed by ERISA.

78. Plaintiff engaged in protected activity under ERISA by using her ERISA-governed

benefit plans to secure payment for medical treatment for her serious medical conditions.

79. Plaintiff was subjected to adverse employment actions in that she was subjected to the elimination of her position and subsequent reassignment of job duties; denial of benefits and accommodation; disciplined; treated hostilely; and constructively terminated.

80. Plaintiff's exercise of her rights under an ERISA-governed benefit plans was a determining and/or motivating factor in said adverse employment actions.

81. Plaintiff was harmed and injured by reason of Defendant's discriminatory and retaliatory acts, as set forth more fully above.

## AS AND FOR AN EIGHTH CAUSE OF ACTION

## FOR BREACH OF CONTRACT

82. Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 81 as if set forth fully herein.

83. As stated, The Defendants Crouse Health Hospital Inc., violated and/or breached the 2016 - 2019 Union contract with Plaintiff in that she was denied the benefits and privileges thereunder, including, but not limited to:

a) Article 9 -NON-DISCRIMINATION: prohibiting discrimination on the basis of disability or age.

b) Article 11 - HOURS OF WORK, SCHEDULING & PREMIUM PAY: Section 11.16 Floating.

c) Article 17 - POSTING AND FILLING POSITIONS: Sections 17.1, 17.7, and 17.8.

d) Article 18 - POSTING AND FILLING POSITIONS: Sections 18.1 - 18.8

e) Article 20 - VACATION: Sections 20.8, 20.10

f) Article 23 - PERSONAL TIME: Sections 23.1 - 23.7

g) Article 26 - MEDICAL AND LIFE INSURANCE: Sections 26.4; 26.13

h) Article 28 - LEAVE OF ABSENCE WITHOUT PAY: Sections 28.1 -28.18

i) Article 30 - LAYOFF AND RECALL: Sections 30.1 - 30.7; 30.11

j) Article 31 LAYOFF AND RECALL: Sections 31.1 - 31.5; 31.7

k) Article 33 - DISCIPLINE AND DISCHARGE: Sections 33.1 - 33.3; 33.5 -

33.6

l) Article 38- QUALITY CARE: Sections 38.10

m) Article 39 - ADJUSTMENTS TO THE BARGAINING UNIT: Section 39.6

n) Article 43 - LABOR-MANAGEMENT MEETINGS: Sections 43.3 -43.7

o) Article 46 - SEVERANCE: Article 46.1 - 46.2

p) Article 52 - PAST CONDITIONS: Sections 52.2- 52.4

q) Health Savings Account as provided under ERISA

r) Good Faith and Fair Dealing


84. Plaintiff was harmed and injured by reason of Defendant's breach of contract, as set

forth more fully above and is entitled to compensation therefor.


WHEREFORE, Plaintiff respectfully requests that this court assume jurisdiction herein

and thereafter:

1. Award Plaintiff appropriate compensatory and punitive damages in an amount to be

defined and determined at the trial of this matter but no less than the sum of $1,000,000.00;

2. Award disbursements and costs of this action;

3. Grant the Plaintiff injunctive and declaratory relief, including a declaratory judgment finding Defendants violated the rights of the Plaintiff and precluding Defendants from so acting against others in the future;

4. Award Plaintiff attorneys fees and costs, and

5. Award such other and further relief as this court deems just and proper.


**JURY DEMAND**


Plaintiff demands a jury trial for all claims stated herein.


Dated: July 5, 2019
        Blossvale, New York

                                        s/A.J. Bosman
                                        _____
                                        A.J. Bosman, Esq.
                                        Bosman Law Firm, LLC
                                        Attorneys for Plaintiff
                                        3000 McConnellsville Road
                                        Blossvale, New York 13308
                                        Tel: (315) 820-4417