UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

LINDA BUCZAKOWSKI,

                    Plaintiff,

        -against-                                    5:18-CV-330 (LEK/ML)

CROUSE HEALTH HOSPITAL, INC., *et al.*,

                    Defendant.

_____

## MEMORANDUM-DECISION AND ORDER

## I.    INTRODUCTION

This case involves claims of discrimination and retaliation against defendants Crouse

Health Hospital, Inc., ("Crouse Hospital"), several of its employees, and a union representative

stemming from plaintiff, Linda Buczakowski's, age and medical disability. On or about July 10,

2017, Plaintiff filed a complaint with the Equal Employment Opportunity Commission

("EEOC") in which she alleged Crouse Hospital discriminated against her. After receiving a right

to sue letter from the EEOC on December 15, 2017, Plaintiff filed the present case pro se against

Crouse Hospital pursuant to the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–34

("ADEA") and the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("ADA"). Dkt.

No. 1 ("Complaint"). On November 9, 2018, Plaintiff retained counsel in this matter. Dkt. No. 25

("Notice of Appearance"). The Honorable David E. Peebles, United States Magistrate Judge,

then granted Plaintiff leave to file an amended complaint, Dkt. No. 46, which Plaintiff summarily

filed, Dkt. No. 49 ("Amended Complaint").

In her Amended Complaint, Plaintiff includes additional claims against Crouse Hospital

pursuant to the New York State Human Rights Law, N.Y. Exec. Law § 296 ("NYSHRL"); the

Family Medical and Leave Act, 29 U.S.C. § 2601, *et seq.* ("FMLA"); and the employee

Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.* ("ERISA").[1] Plaintiff claims that

Crouse Hospital discriminated and retaliated against her in violation of the ADEA, ADA,

NYSHRL, FMLA, and ERISA. Am. Compl. ¶¶ 41–59, 70–81. Plaintiff also claims that Crouse

Hospital breached the collective bargaining agreement with Plaintiff's union. Id. ¶¶ 82–83.

Finally, Plaintiff brings claims pursuant to the NYSHRL against John Bergemann, Crouse

Hospital's director of Human Resources; Lisa Dittrich, one of Plaintiff's supervisors; Catherine

Greenia, another of Plaintiff's supervisors; and Dorothy DiCarlo, Plaintiff's union representative

(collectively, "Individual Defendants"). Id. ¶¶ 5, 16, 22. Plaintiff claims the Individual

Defendants discriminated and retaliated against her because of Plaintiff's age. Id. ¶¶ 51–52.

Crouse Hospital and the Individual Defendants have moved to dismiss the Amended

Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt.

Nos. 53 ("Crouse Hospital's Motion"); 57 ("Bergemann, Dittrich, and Greenia's Motion"); 70

("DiCarlo's Motion"). Plaintiff filed a response to Crouse Hospital's Motion, Dkt. No. 59

("Plaintiff's Response to Crouse Hospital"), and to Bergemann, Dittrich, and Greenia's Motion,

Dkt. No. 66 ("Plaintiff's Response to Bergemann, Dittrich, and Greenia").[2] Crouse Hospital has

replied, Dkt. No. 62 ("Crouse Hospital Reply"), as have Bergemann, Dittrich, and Greenia, Dkt.

---

[1] Plaintiff has brought a separate suit before this Court against her union based on a similar set of facts as alleged here, Buczakowski v. 1199SEIU, No. 18-CV-812 (N.D.N.Y. filed July 10, 2018).

[2] While Plaintiff has not directly responded to DiCarlo's Motion, the Court will treat Plaintiff's Response to Bergemann, Dittrich, and Greenia as the response to DiCarlo's Motion since DiCarlo's Motion raises similar arguments to those included in Bergemann, Dittrich, and Greenia's Motion.

No. 67 ("Bergemann, Dittrich, Greenia Reply"). For the following reasons, all Motions are granted in part and denied in part.

## II.     BACKGROUND

The Court draws all facts, which are assumed to be true, from the Amended Complaint. Bryant v. N.Y. State Educ. Dep't, 692 F.3d 202, 210 (2d Cir. 2012).

Plaintiff was hired by Crouse Hospital's "business office" around October 2012. Am. Compl. ¶ 6. Most recently, she worked as a "float" worker in the business office. Id. In 2016, Plaintiff was diagnosed with cancer and took medical leave so she could undergo treatment. Id. ¶¶ 12–13. Upon returning to her job in spring 2017, Plaintiff "requested a parking space closer to her work." Id. ¶¶ 15–17.

 On May 4, 2017, Plaintiff attended a meeting with three other floats. Id. ¶ 17. At the meeting, DiCarlo informed the floats that Crouse Hospital was eliminating the float "title," but not their "positions." Id. The other three other floats, two of whom were less senior and all of whom were younger and non-disabled, were given new positions at the meeting, while Plaintiff was told "her position was still in 'formulation.'" Id. The hospital then provided the three other floats with "full training" in their new positions, which provided them with "better and more numerous employment opportunities," while Plaintiff was provided just "introductory 'Soarian'" training as she awaited her new assignment. Id. ¶ 24.

After the meeting, one of Plaintiff's union representatives[3] requested Plaintiff and the representative meet with Bergemann. At that meeting, Bergemann disclosed Plaintiff's history of cancer to the union representative without Plaintiff's permission. Id. ¶ 19. He also urged Plaintiff

---

[3]  Plaintiff fails to name the representative in her Amended Complaint.

to "take Social Security Disability, retire, and 'apply for Medicare.'" Id. Plaintiff responded that "her medical condition had nothing to do with her employment and she would not be leaving." Id. The union representative reiterated that her position was not being eliminated. Id. ¶ 20.

Plaintiff then had a meeting with Greenia in which Greenia admitted that Crouse Hospital had, in fact, eliminated Plaintiff's position. Id. ¶ 25. Thereafter, Greenia "deliberately" ceased "providing work assignments to Plaintiff while providing such assignments to her co-workers in her place." Id. ¶ 27.

Subsequently, DiCarlo informed Plaintiff within a week of the May 4th meeting that "she had eliminated Plaintiff's position, and that DiCarlo would be meeting with HR to determine 'bidding' outside of Plaintiff's department." Id. ¶ 28. "Plaintiff had no desire to bid or 'bump'" into a new position "as it compromised her job security, schedule and seniority" and "subject[ed] Plaintiff to discrimination, humiliation and disparagement." Id. ¶¶ 18, 28. The other former floats were not required to bid on or bump into a new position. Id. ¶ 34. Plaintiff then transferred into a new position that "only provide[d] three days to 'qualify.'" Id.

On or about May 11, 2017, Plaintiff complained to Bergemann "about the discriminatory treatment, contract violations, and hostile work environment Plaintiff was suffering" along with the "unlawful disclosure of private medical information." Id. ¶ 29. Bergemann, however, did not investigate Plaintiff's complaints. Id.

At some point after Plaintiff's May 11th meeting with Bergemann, Dittrich "removed [Plaintiff] from training" and "informed [Plaintiff] she was being sent home." Id. ¶ 31. "Dittrich then called Plaintiff and instructed her to appear at a disciplinary meeting on Wednesday[,] May

17th where Plaintiff was falsely charged with a 'class c' offense for disrespecting Bergemann when she complain of his treatment." Id. ¶ 33.

On June 5, 2017, Plaintiff "bumped" into a new position of "patient account representative." Id. ¶ 35. Upon transferring into the new position, Plaintiff "was advised that she would not have time available for her medical appointments and would be subject to disciplinary action if she missed work as a result." Id. Plaintiff then resigned from her position because "she could endure no more." Id.

## III. LEGAL STANDARD

To survive a Rule 12(b)(6) motion, a "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quotation marks and citations omitted). In addition to accepting all factual allegations as true, a court must draw all reasonable inferences in a plaintiff's favor. Jaffer v. Hirji, 887 F.3d 111, 114 (2d Cir. 2018). However, the complaint must provide enough "factual content" to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. Therefore, a complaint cannot survive merely by alleging "labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). When there are "two plausible inferences that may be drawn from factual allegations" in the complaint, "[a] court ruling on such a motion may not properly dismiss a complaint that states a plausible version of the events merely because the court finds a different version more plausible." Anderson News, L.L.C. v. Am. Media Inc., 680 F.3d 162, 185 (2d Cir. 2012); see also Twombly, 550 U.S. at 556 ("[A] well-pleaded

complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable.")

## IV. DISCUSSION

The Opinion first addresses Crouse Hospital's arguments for why Plaintiff has failed to adequately plead adverse employment action as required to bring her discrimination claims. It will then address Crouse Hospital's arguments that Plaintiff has not exhausted her administrative remedies as required to plead her ADA and ADEA retaliation claims and that Plaintiff has insufficiently alleged she engaged in protected activity as required to bring each of her retaliation claims. The Opinion will then discuss Crouse Hospital's arguments that Plaintiff has not plausibly alleged that the hospital interfered with Plaintiff's FMLA benefits and that Plaintiff's breach-of-contract claim is time barred. It will conclude with a discussion of the Individual Defendants' arguments that Plaintiff has failed to state a claim against them under the NYSHRL.

### A. Discrimination

#### 1. Adverse Employment Action

Plaintiff asserts claims of discrimination under the ADEA, the ADA, the NYSHRL, ERISA, and the FMLA. Am. Compl. ¶¶ 41–81. To state a claim of discrimination under these statutes (except the FMLA),[4] Plaintiff must plead facts plausibly suggesting she suffered an adverse employment action. See Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 107 (2d Cir.

---

[4] "FMLA claims come in at least two varieties: interference and retaliation." Crosby v. McDonald's of Guilderland, LLC, No. 17-CV-1160, 2018 WL 2077884, at *5 (N.D.N.Y. May 2, 2018) (quoting Woods v. START Treatment & Recovery Ctrs., Inc., 864 F.3d 158, 166 (2d Cir. 2017) (internal quotation marks omitted). Plaintiff has not provided, and the Court is not aware of, any precedent suggesting that one may bring a claim of discrimination under the FMLA. Therefore, to the extent Plaintiff has brought such a claim that claim is dismissed.

2010) (ADEA); <u>Giordano v. City of New York</u>, 274 F.3d 740, 747 (2d Cir. 2001) (ADA);

<u>Spiegel v. Schulmann</u>, 604 F.3d 72, 80 (2d Cir. 2010) (NYSHRL); <u>Resner v. Arc Mills, Inc.</u>, 152

F.3d 920 (2d Cir. 1998) (ERISA). For each of these claims, Plaintiff alleges she was "subjected

to adverse employment actions in that she was subjected to the elimination of her position and

subsequent reassignment of job duties; denial of benefits and accommodation; disciplined;

treated hostilely; and constructively terminated." Am. Compl. ¶¶ 44, 50, 57, 61, 72, 79. Crouse

Hospital argues that "the Amended Complaint fails to plausibly allege that Plaintiff suffered any

actionable adverse employment action." Dkt. No. 52-1 ("Crouse Hospital Memorandum") at 4.

Generally speaking,

> An adverse employment action is a materially adverse change in the
> terms and conditions of employment . . . . To be materially adverse,
> a change in working conditions must be more disruptive than a mere
> inconvenience or an alteration of job responsibilities . . . . Such a
> change might be indicated by a termination of employment, a
> demotion evidenced by a decrease in wage or salary, a less
> distinguished title, a material loss of benefits, significantly
> diminished material responsibilities, or other indices . . . unique to a
> particular situation.

<u>Baker v. Connecticut</u>, No. 03-CV-1894, 2006 WL 581205, at *8 (D. Conn. Mar. 8, 2006)

(internal quotation marks omitted) (quoting <u>Weeks v. New York State (Div. of Parole)</u>, 273 F.3d

76, 85 (2d Cir. 2001), <u>abrogated on other grounds by</u> <u>Nat'l R.R. Passenger Corp. v. Morgan</u>, 536

U.S. 101, 108–14, (2002)).

### a.  Actionable Transfer

Plaintiff alleges that she suffered adverse action because Crouse Hospital "forced" her to

"bump" into a new "patient access representative" position. Am. Compl. ¶ 35; <u>see also</u> <u>id.</u> ¶¶ 44,

50, 57, 61, 72, 79. Plaintiff, however, has not alleged facts to plausibly suggest that her new

position was "materially less prestigious, materially less suited to [Plaintiff's] skills and expertise, or materially less conducive to career advancement" as required to plead actionable transfer. See Edwards v. Huntington Union Free Sch. Dist., 957 F. Supp. 2d 203, 211 (E.D.N.Y. 2013) (quoting Galabya v. N.Y.C. Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000)). While Plaintiff does allege that she was denied training once she lost her float title, Am. Compl. ¶ 24 (alleging Crouse Hospital "excluded [Plaintiff] from all but the introductory 'Soarian' training while her younger, non-disabled co-workers even with less seniority were assigned full training providing better and more numerous employment opportunities" ), she alleges in conclusory fashion that this denial bore on Plaintiff's "opportunities for professional growth and career advancement." Nakis v. Potter, No. 01-CV-10047, 2004 WL 2903718, at *20 (S.D.N.Y. Dec. 15, 2004). Thus, because Plaintiff "cannot show material harm from a denial of training . . . there is no adverse employment action." See Hill v. Rayboy-Brauestein, 467 F. Supp. 2d 336, 352 (S.D.N.Y. 2006).

In sum, Plaintiff has not sufficiently alleged facts to show she has suffered adverse action because of her job transfer.

### b. Denial of Benefits and Accommodation

Plaintiff alleges she also suffered adverse action because she was subjected to "a denial of benefits and accommodation." Am. Compl. ¶¶ 44, 50, 57, 61, 72, 79. Plaintiff claims in conclusory fashion that "Defendants refused to provide plaintiff equal coverage to that she had prior to her termination and in violation of her rights under . . . ERISA . . . ." Id. ¶ 36. This allegation is insufficient to show the purportedly inadequate medical coverage is governed by ERISA.

8

The only other benefit pled is "a parking space closer to [Plaintiff's] work" to which Plaintiff alleges she was entitled "[a]s a disabled employee." Am. Compl. ¶ 16. Plaintiff, however, does not allege that she was in fact denied a parking space nor does she allege how such a denial would constitute a "materially adverse change in the terms and conditions of employment." Baker, 2006 WL 581205, at *8 (quoting Weeks, 273 F.3d at 85). Hence, the Court does not find Plaintiff to have suffered adverse action because Crouse Hospital denied her benefits.

Regarding Plaintiff's claim that she suffered an adverse action because she was denied an accommodation, Plaintiff improperly conflates two separate theories of proving a discrimination claim. Discrimination claims "may be brought under a theory of adverse employment action *or* of failure to provide reasonable accommodation." Berger v. N.Y.C. Police Dep't, 304 F. Supp. 3d 360, 368 (S.D.N.Y. 2018) (emphasis added) (citing McMillan v. City of New York, 711 F.3d 120, 125–26 (2d Cir. 2013)). "To maintain a prima facie claim under the ADA or the NYSHRL for failure to accommodate, an employee must show that: '(1) he is a person with a disability under the meaning of the ADA [or the NYSHRL]; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, the employee could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations.'" Id. at 368–69 (quoting Noll v. Int'l Bus. Machs. Corp., 787 F.3d 89, 94 (2d Cir. 2015).[5]

---

[5] Plaintiff does not contest Defendant's statement that "'accommodation' claims typically arise, if at all, only with respect to disability discrimination claims under the ADA and NYHRL." Def.'s Mem. at 7. Thus, the Court will only consider Plaintiff's accommodation claims under those statutes.

Anticipating the Court construing the Amended Complaint to allege a reasonable accommodation claim, Crouse Hospital argues that Plaintiff has not sufficiently alleged she has a disability. Crouse Hospital's Mem. at 7. In Berk v. Bates Advertising USA, Inc., the court found the plaintiff's breast cancer to be a qualifying disability under the ADA because the plaintiff "missed work and was in and out of the hospital on three occasions over the course of two months for surgical procedures . . . ." No. 94-CV-9140, 1997 WL 749386, at *5 (S.D.N.Y. Dec. 3, 1997). Similar to the plaintiff in Berk, Plaintiff missed work for a period of several months after she was diagnosed with cancer and underwent surgery. Am. Compl. ¶ 12–15. Consequently, Plaintiff's cancer constitutes a qualifying disability under the ADA. See Katz v. Adecco USA, Inc., 845 F. Supp. 2d 539, 548 (S.D.N.Y. 2012) ("Cancer will 'virtually always' be a qualifying disability.") (quoting 29 C.F.R. § 1630.2(j)(3)(ii)–(iii) (2011)). Plaintiff also has a qualifying disability under the NYSHRL given "'disability' is 'more broadly defined' under the NYHRL . . . than it is under the ADA." Weissman v. Dawn Joy Fashions, Inc., 214 F.3d 224, 233 (2d Cir. 2000).

Crouse Hospital further argues that Plaintiff has not sufficiently pled that the Hospital refused to make necessary accommodations for her. Crouse Hospital's Mem. at 7–8. Plaintiff counters Crouse Hospital advised her that she "would not have time available for her medical appointments" in her new position as patient account representative "and would be subject to disciplinary action if she missed work as a result" of taking medical leave. Am. Compl. ¶ 35. "Temporary leaves of absence—whether they are paid or unpaid—can provide a reasonable accommodation under the ADA where the leave will likely enable an employee to return to work." Wenc v. New London Bd. of Educ., No. 14-CV-0840, 2016 WL 4410061, at *13 (D.

Conn. Aug. 16, 2016) (citing, inter alia, <u>Graves v. Finch Pruyn & Co.</u>, 457 F.3d 181, 185 n.5 (2d Cir. 2006), <u>aff'd</u>, 702 F. App'x 27 (2d Cir. 2017)).[6] And "a temporary leave of absence, even an extended leave, can be a reasonable accommodation" under the NYSHRL. <u>Fernandez v. Windmill Distrib. Co.</u>, 159 F. Supp. 3d 351, 366 (S.D.N.Y. 2016) (quoting <u>LaCourt v. Shenanigans Knits, Ltd.</u>, No. 102391/11, 38 Misc.3d 1206(A), 2012 WL 6765703, at *5 (N.Y. Sup. Ct. 2012)). Thus, Plaintiff has plausibly alleged that she has a disability, that Crouse Hospital could have provided reasonable accommodations to ameliorate her disability, and that the Hospital refused to do so. Plaintiff's discrimination claim based on failure to a reasonably accommodate Plaintiff's disability may proceed.

### c. Hostile Work Environment

Plaintiff further alleges she suffered adverse action because of a hostile work environment. Am. Compl. ¶¶ 44, 50, 57, 61, 72, 79. As another court in this circuit has observed:

> In general, if bringing a hostile-work-environment claim, a plaintiff must show that a defendant's conduct (1) was 'objectively severe or pervasive,' (2) created an environment that was 'subjectively perceive[d] as hostile or abusive,' and (3) 'created such an environment because of the plaintiff's [protected characteristic].' <u>Patane v. Clark</u>, 508 F.3d 106, 113 (2d Cir. 2007). To survive a motion to dismiss, a plaintiff need only 'plead facts sufficient to support the conclusion that she was faced with harassment . . . of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse.' <u>Donahue v. Asia TV USA Ltd.</u>, 208 F. Supp. 3d 505, 514 (S.D.N.Y. 2016) (alterations in original) (quoting <u>Patane</u>, 508 F.3d at 113). Courts will look at 'the totality of the circumstances, including the frequency of the

---

[6] Although the Second Circuit has "not squarely addressed in a published opinion when medical leave may constitute a 'reasonable accommodation' under the ADA," <u>Wenc</u>, 702 F. App'x at 30, "[m]ost other circuits and the Equal Employment Opportunity Commission have concluded that, in some circumstances, an unpaid leave of absence can be a reasonable accommodation under the ADA." <u>Graves</u>, 457 F.3d at 185 (citing cases).

discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.' <u>Yan v. Ziba Mode Inc.</u>, No. 15-CV-47, 2016 WL 1276456, at *5 (S.D.N.Y. Mar. 29, 2016) (internal quotations omitted). 'While each of these elements is relevant to the inquiry, no single factor is required.' <u>Dawson v. Cty. of Westchester</u>, 373 F.3d 265, 272 (2d Cir. 2004) (internal quotations omitted).

When analyzing severity, a court 'must distinguish between merely offensive or boorish conduct and conduct that is sufficiently severe as to alter the conditions of employment.' <u>Lenart v. Coach Inc.</u>, 131 F. Supp. 3d 61, 66 (S.D.N.Y. 2015). Similarly, when analyzing pervasiveness, a court will evaluate whether 'the incidents complained of [were] more than episodic.' <u>Littlejohn v. City of New York</u>, 795 F.3d 297, 321 (2d Cir. 2015). 'In other words, a plaintiff must show either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of her working environment.' <u>Yan</u>, 2016 WL 1276456 at *5 (internal quotations omitted).

<u>Alvarado v. Mount Pleasant Cottage Sch. Dist.</u>, No. 18-CV-494, 2019 WL 4039149, at *9 (S.D.N.Y. Aug. 27, 2019).[7] "The Second Circuit has 'repeatedly cautioned against setting the bar too high' in this context." <u>Ruiz v. City of New York.</u>, No. 14-CV-5231, 2015 WL 5146629, at *8 (S.D.N.Y. Sept. 2, 2015) (quoting <u>Patane</u>, 508 F.3d at 113). "'The environment need not be unendurable or intolerable' to be a hostile work environment." <u>Rodriguez v. Town of Ramapo</u>, No. 18-CV-1878, 2019 WL 4688609, at *22 (S.D.N.Y. Sept. 26, 2019) (quoting <u>Terry v. Ashcroft</u>, 336 F.3d 128, 148 (2d Cir. 2003)).

---

[7] While the standard articulated in <u>Alvarado</u> pertains to hostile-work-environment claims brought under Title VII, that standard also applies to such claims brought under the anti-discrimination statutes that are the subject of this action. <u>See, e.g.</u>, <u>Zavala v. Cornell Univ.</u>, 9 F. Supp. 3d 213, 220 (N.D.N.Y. 2014) (Kahn, J.) (ADA); <u>Wheeler v. Bank of New York Mellon</u>, No. 16-CV-1176, 2018 WL 3730862, at *7 (N.D.N.Y. Aug. 6, 2018) (Kahn, J.) (ADEA); <u>Woods v. Enlarged City Sch. Dist.</u>, 473 F. Supp. 2d 498 n.1 (S.D.N.Y. 2007) (NYSHRL).

Plaintiff has established Crouse Hospital and several of its employees objectively acted towards Plaintiff in a pervasive and severe manner, which "created an environment that was 'subjectively perceive[d] as hostile or abusive.'" See Alvarado, 2019 WL 4039149, at *9 (quoting Patane, 508 F.3d at 113). Plaintiff alleges multiple incidents of plausibly hostile conduct that occurred in the span of just a month. For instance, when Crouse Hospital eliminated the float title on May 4, 2017, it promoted Plaintiff's three younger, non-disabled colleagues (two of whom were also less senior) to new positions, while Plaintiff had to "bump" into a new position by June 5, 2017 that "compromised her job security and schedule and seniority" and "subject[ed] Plaintiff to discrimination, humiliation and disparagement."[8] Am. Compl. ¶¶ 17–18, 28, 34–35. As another example, Bergemann disclosed Plaintiff's disability to a union representative without permission and told Plaintiff to "take Social Security Disability, retire, and 'apply for Medicare.'" Id. ¶ 19. Crouse Hospital also "excluded [Plaintiff] from all but the introductory 'Soarian' training while her younger, non-disabled co-workers even with less seniority were assigned full training providing better and more numerous employment opportunities." Id. ¶ 24. Plaintiff found such treatment to be "hostile" and "degrading." Id. On or about May 11, 2017, Greenia "deliberately [did] not provid[e] work assignments to Plaintiff while providing such assignment to her [younger, non-disabled] co-workers in her place." Id. ¶ 27. Plaintiff resigned after a month of this treatment because "she could endure no more." Id. Accordingly, Plaintiff "has alleged that the harassment permeated her work environment and occurred with such frequency such that a 'reasonable employee would find the conditions of her employment altered

---

[8] Plaintiff does not clarify what the "bumping" process entailed. But it's clear from the Amended Complaint that, unlike Plaintiff, Plaintiff's younger, non-disabled co-workers were able to transfer into new positions that did not harm their careers.

for the worse.'" Prince v. Madison Square Garden, 427 F. Supp. 2d 372, 380 (S.D.N.Y. 2006)

(quoting Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 70 (2d Cir. 2000).

The discussion above also demonstrates Plaintiff has plausibly alleged that Crouse

Hospital created a hostile work environment "because of the plaintiff's [protected

characteristics]." See Alvarado, 2019 WL 4039149, at *9 (quoting Patane, 508 F.3d at 113). Age

and disability are protected characteristics for the purposes of a hostile-work-environment claim,

Monachino v. Bair, 769 F. Supp. 2d 431, 442 (S.D.N.Y. 2011), aff'd, 481 F. App'x 20 (2d Cir.

2012), and Plaintiff has shown she was targeted because of her age and disability, see Rodriguez,

2019 WL 4688609, at *23 (holding the plaintiff plausibly alleged he was subjected to hostile

conduct on account of his race, a protected characteristic).

Crouse Hospital's reliance on Wheeler v. Bank of New York Mellon and Marsh-Godreau

v. SUNY Coll. does not compel a different result. In Wheeler, this Court concluded the plaintiff

failed to adequately plead a hostile-work-environment claim in part because the "vast majority"

of the plaintiff's allegations did not, unlike here, implicate the plaintiff's protected

characteristics. No. 16-CV-1176, 2018 WL 3730862, at *8 (N.D.N.Y. Aug. 6, 2018). In Marsh-

Godreau, this Court found the plaintiff's allegations of, over the course of three months,

receiving one negative performance review that included ten references to the plaintiff's previous

medical leave and finding a document containing several "observations from [] co-workers on

how Plaintiff's work behavior was affected by her disability" did not reflect "'severe or

pervasive' incidents of harassment." No. 15-CV-437, 2016 WL 1049004, at *1, *6 (N.D.N.Y.

Mar. 11, 2016). In the instant action, however, Crouse Hospital and several of its employees

subjected Plaintiff to more instances of hostile conduct than found in Marsh-Godreau over a shorter period of time.

In sum, Plaintiff's claim of discrimination based on a hostile work environment may proceed.[9]

### d.  Constructive Discharge

Plaintiff also alleges she suffered adverse action because Crouse Hospital "constructively terminated" her. Am. Compl. ¶¶ 44, 50, 57, 61, 72, 79. As this Court has previous observed:

> It is well settled that '[a]n adverse employment action may also take the form of a constructive discharge.' Caskey v. Cty. of Ontario, 560 F. App'x 57, 59 (2d Cir. 2014); see also Adams v. Festival Fun Parks, LLC, 560 F. App'x 47, 49 (2d Cir. 2014) (same); Giambattista v. Am. Airlines, Inc., 5 F. Supp. 3d 284, 292 (E.D.N.Y. 2014) (same). A constructive discharge occurs 'when the employer, rather than acting directly, deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation.' Morris v. Schroder Capital Mgmt. Int'l, 481 F.3d 86, 88 (2d Cir. 2007) (internal quotation marks omitted). 'Working conditions are intolerable if they are so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign.' Serricchio v. Wachovia Sec. LLC, 658 F.3d 169, 185 (2d Cir. 2011). In this District, that means 'that to demonstrate constructive discharge, [a] plaintiff must demonstrate harassment that is more severe and pervasive than that required to show a hostile

---

[9]  In support of her hostile-work-environment claim Plaintiff further alleges that she was (1) "given ambiguous and hostile responses to questions regarding the status of her position/employment;" (2) "subjected to hostile and cold demeanor, avoidance, and physical intimidation by supervisors;" (3) "had co-workers avoid and stop speaking with her;" (4) "subjected to a false accusation of misconduct by Defendant Bergemann and resulting disciplinary action;" and (5) "threatened that if she did not leave quietly, security would be called." Pl.'s Resp. at 9–10 (internal quotation marks omitted). The Court is not convinced these allegations reflect nothing more than "offensive utterances and remarks that seemingly and understandably engendered offensive feelings in Plaintiff," but which do not meet the standard for a hostile-work-environment claim. See Alvarado, 2019 WL 4039149, at *10. Moreover, Plaintiff has not alleged how this conduct "occurred because of a protected characteristic." See Tolbert v. Smith, 790 F.3d 427, 439 (2d Cir. 2015).

work environment.' Ternullo v. Reno, 8 F. Supp. 2d 186, 192 (N.D.N.Y. 1998) (citing Christopher-Ketchum v. Agway Energy Prods., 988 F. Supp. 610 (N.D.N.Y. 1997)).

Pistello v. Bd. of Educ. of Canastota Cent. Sch. Dist., No. 16-CV-212, 2019 WL 1300947, at *24 (N.D.N.Y. Mar. 21, 2019) (Kahn, J.).[10] "[A] plaintiff must plausibly allege that 'the discharge occurred in circumstances giving rise to an inference of discrimination based on [a protected characteristic].'" Trujillo v. City of New York, No. 14-CV-8501, 2016 WL 10703308, at *20 (S.D.N.Y. Mar. 29, 2016) (quoting Pecora v. Brady, No. 90-CV-7612, 1992 WL 162640, at *1 (S.D.N.Y. June 19, 1992), aff'd, 696 F. App'x 560 (2d Cir. 2017)).

Plaintiff has plausibly alleged "an aggravated case . . . of hostile work environment," which is, in effect, constructive discharge. Petyan v. N.Y.C. Law Dep't, No. 14-CV-1434, 2015 WL 1855961, at *9 n.10 (S.D.N.Y. Apr. 23, 2015) (quoting Pa. State Police v. Suders, 542 U.S. 129, 146 (2004), report and recommendation adopted by No. 14-CV-1434, 2015 WL 4104841 (S.D.N.Y. July 2, 2015)). In addition to the allegations supporting Plaintiff's claim of a hostile work environment discussed above, Plaintiff alleges she was advised that she "would not have time available for her medical appointments" in her new position as patient account representative "and would be subject to disciplinary action if she missed work as a result" of taking medical leave. Am. Compl. ¶ 35. Plaintiff therefore "resigned in protest as she could endure no more." Id. These allegations are sufficient to allege constructive discharge. See

---

[10] While the standard articulated in Pistello pertains to constructive-discharge claims brought under the ADA, that standard also applies to such claims brought under the anti-discrimination statutes that are the subject of this action. See, e.g., Connolly v. Equity Servs., Inc., 756 F. App'x 83, 84 n.1 (2d Cir. 2019) (FMLA); Makinen v. City of New York, 722 F. App'x 50, 52 (2d Cir. 2018) (NYSHRL); Cioinigel v. Deutsche Bank Americas Holding Corp., No. 12-CV-434, 2013 WL 120618, at *3 (S.D.N.Y. Jan. 10, 2013) (ERISA); Stetson v. NYNEX Serv. Co., 995 F.2d 355, 360 (2d Cir. 1993) (ADEA).

Bellegar de Dussuau v. Blockbuster, Inc., No. 03-CV-6614, 2006 WL 465374, at *5 (S.D.N.Y. Feb. 28, 2006) (denying a defendant's motion to reconsider denial of summary judgment on a constructive-discharge claim in part because defendant prevented the plaintiff from taking time off for medical appointments."); see also Gonzalez v. Bratton, 147 F. Supp. 2d 180, 198 (S.D.N.Y.2001) (finding a defendant's "unreasonable level of scrutiny, excessive hostility and unmerited disciplinary charges" sufficient to sustain jury's finding of constructive discharge).

In support of its argument to dismiss Plaintiff's constructive-discharge claim, Crouse Hospital relies on a case previously decided by this Court, Rother v. NYS Dep't of Corr. & Cmty. Supervision. In that case, the Court dismissed the plaintiff's claim for constructive discharge because the plaintiff relied on discriminatory conduct that occurred "at a different facility than the facility at which Plaintiff was working when she went on leave and to which Plaintiff would have returned had she not resigned" and the conduct at issue occurred months before the plaintiff resigned. 970 F. Supp. 2d 78, 94–95 (N.D.N.Y. 2013). Here, all of the incidents upon which Plaintiff relies occurred at the same facility and Plaintiff resigned the within a month of those incidents taking place.

In sum, Plaintiff's claims of discrimination based on constructive discharge may proceed.

### B. Retaliation

#### 1. Exhaustion of Administrative Remedies for Plaintiff's ADA and ADEA Claims

"Before commencing a lawsuit in federal court under [the ADA and the ADEA], a plaintiff must first exhaust his or her administrative remedies—i.e., timely file a charge with the EEOC." Goodwin v. Solil Mgmt. LLC, No. 10-CV-5546, 2012 WL 1883473, at *3 (S.D.N.Y.

May 22, 2012) (citing <u>McPherson v. N.Y.C. Dep't of Educ.</u>, 457 F.3d 211, 213 (2d Cir. 2006);

<u>Hoffman v. Williamsville Sch. Dist.</u>, 443 F. App'x 647, 649 (2d Cir. 2011)).

As another court in this circuit has noted:

> Claims not asserted before the EEOC may be pursued directly in federal court if they are reasonably related to claims already filed with the agency. The Second Circuit has recognized three types of unasserted claims that are reasonably related to those asserted in an EEOC complaint: (1) claims falling within the scope of the EEOC investigation which can reasonably be expected to grow out of the discrimination charged in the EEOC complaint; (2) claims alleging retaliation against an employee for filing an EEOC complaint; and (3) claims alleging further incidents of discrimination carried out in the precise manner alleged in the EEOC complaint.

<u>Cordoba v. Beau Dietl & Assocs.</u>, No. 02-CV-4951, 2003 WL 22902266, at *10 (S.D.N.Y. Dec. 8, 2003) (internal citations and quotation marks omitted) (citing <u>Terry</u>, 336 F.3d at 148).

Plaintiff alleges that she filed a claim with the EEOC on or about July 10, 2017 that included charges of "retaliation for complaining of discrimination" to Crouse Hospital. Am. Compl. ¶ 7. But the Charge of Discrimination only includes claims of discrimination under the ADA and ADEA. Dkt. No. 52-3 ("EEOC Charge").[11] Hence, the Court must determine if Plaintiff's ADA and ADEA retaliation claims are "reasonably related" to her claims of discrimination included in the EEOC Charge. <u>Cordoba</u>, 2003 WL 22902266, at *10.

Plaintiff argues that she "wrote repeated correspondence to Charlene McKinnon, Investigator at the EEOC, including correspondence dated November 6, 2017 and July 21, 2017,

---

[11]  "For purposes of a motion to dismiss," the Second Circuit "deem[s] a complaint to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference . . . ." <u>Rothman v. Gregor</u>, 220 F.3d 81, 88–89 (2d Cir. 2000). "Courts in this Circuit have repeatedly held that when EEOC charges are expressly referred to in the pleading, they may be considered incorporated by reference." <u>Muhammad v. N.Y.C. Transit Auth.</u>, 450 F. Supp. 2d 198, 204 (E.D.N.Y. 2006) (citing cases).

complaining of retaliation." Pl.'s Resp. to Crouse Hospital at 15. Although Plaintiff fails to

clarify, the Court assumes Plaintiff is arguing that her retaliation claims fall under the first

Cordoba exception because she put the EEOC on notice of her claims of retaliation when

Plaintiff communicated with Investigator McKinnon after filing the EEOC Charge. Plaintiff does

not cite to any correspondence from the EEOC regarding her retaliation claims that might suggest

that the EEOC incorporated such claims into its investigation. And even if Plaintiff had done so,

courts in this circuit have found that when "the EEOC charge alleges discrimination but not

retaliation the reasonable scope of the agency's investigation cannot be expected to encompass

allegations of retaliatory motive." See, e.g., Sussle v. Sirina Prot. Sys. Corp., 269 F. Supp. 2d

285, 314 (S.D.N.Y. 2003) (quoting Gambrell v. Nat'l R.R. Passenger Corp., No. 01-CV-643,

2003 WL 282182, at *8 (S.D.N.Y. Feb. 3, 2003)). In sum, the first Cordoba exception to the

exhaustion requirement does not apply.

The second Cordoba exception also does not apply here because Plaintiff "alleges

retaliation only for filing internal complaints of discrimination with [Crouse Hospital] before

[her] termination, not for filing the EEOC complaint after [her] termination." See Gambrell,

2003 WL 282182, at *8; see generally Am. Compl. "The reason for the retaliatory exception to

the exhaustion requirement is to prevent plaintiffs from having to reassert a claim based on

retaliatory conduct that took place after that claim was filed. As such, retaliation occurring before

an EEOC (or state equivalent) complaint is filed does not implicate the policy consideration

underpinning this exception to the exhaustion requirement." Petyan, 2015 WL 1855961, at *6.

The final Cordoba exception is also inapplicable here because Plaintiff's "*retaliation*

claim[s] plainly [are] not [] further incident[s] of *discrimination* carried out in precisely the same

manner as the" age and disability "discrimination alleged in the EEOC Complaint." See Cordoba, 2003 WL 22902266, at *10 (emphasis added). Furthermore, this exception is targeted at conduct that "takes place subsequent to the filing of the EEOC charge." DeBerry v. Brookdale Univ. Hosp. & Med. Ctr., 11 F. Supp. 3d 387, 393 (E.D.N.Y. 2014). Consequently, because Plaintiff's retaliation claims address conduct that occurred before she filed her EEOC Charge, then the third exception cannot apply to this case.

In sum, Plaintiff's retaliation claims under the ADA and ADEA are dismissed for failure to exhaust administrative remedies. "An employee alleging discrimination under the ADA or ADEA in New York must file [her] administrative claim no later than 300 days after she experienced discrimination." Anderson v. Royal Realty Corp., No. 14-CV-6797, 2014 WL 6908971, at *4 (E.D.N.Y. Dec. 8, 2014) (citing Cherry v. City of New York, 381 F. App'x 57, 58 (2d Cir. 2010)). Hence, "[i]t is too late for Plaintiff to exhaust [her] unexhausted claims now" because she resigned in 2017, "well beyond 300 days ago." See Birch v. Cuny/Laguardia Cmty. Coll., No. 14-CV-7573, 2015 WL 459287, at *4 n.3 (E.D.N.Y. Feb. 3, 2015). Therefore, Plaintiff's claims for retaliation under the ADA and ADEA are dismissed with prejudice. See id.

### 2. Protected Activity

Crouse Hospital argues that Plaintiff has not plausibly alleged she engaged in protected activity for any of her retaliation claims. Since the Court has already dismissed Plaintiff's claims for retaliation under the ADA and ADEA, Part IVB.1. supra, then it will only consider Crouse Hospital's arguments in the context of Plaintiff's FMLA, ERISA, and NYSHRL claims.

"[I]n order for a plaintiff to exercise rights protected under the FMLA, the plaintiff must demonstrate she actually has a valid claim to FMLA benefits." Milne v. Navigant Consulting,

No. 08-CV-8964, 2010 WL 4456853, at *10 (S.D.N.Y. Oct. 27, 2010) (internal quotation marks

omitted). Plaintiff alleges that she "was prevented from performing such of those work duties as

to qualify her for FMLA and medical leave." Am. Compl. ¶ 12. She further alleges, "As the

policy of the Defendant Crouse Hospital and the law allows 12 weeks of FMLA leave per year,

Plaintiff was entitled to same . . . ." Yet, "[t]hese are conclusory statements that are not entitled

to weight under Iqbal and cannot be the basis of a plausible complaint surviving a motion to

dismiss." Milne, No. 08-CV-8964, 2010 WL 4456853, at *9 (S.D.N.Y. Oct. 27, 2010)

(concluding the plaintiff had failed to sufficiently plead protected activity in support of her

FMLA retaliation claim as she only alleged "that she 'satisfied the requisite eligibility criteria to

be entitled to the leave benefits afforded under FMLA' and that her request 'constituted protected

leave under the FMLA.'").

Like Plaintiff's FMLA retaliation claim, Plaintiff has failed to plausibly allege that

Crouse Hospital retaliated against her under ERISA. "To succeed on a[n] [ERISA retaliation]

claim, a plaintiff must demonstrate that the employer specifically *intended* to interfere with

benefits." Wilkins v. Time Warner Cable, Inc., 10 F. Supp. 3d 299, 315 (N.D.N.Y. 2014) (Kahn,

J.) (emphasis added) (citing Dister v. Cont'l Group, Inc., 859 F.2d 1108, 1111 (2d Cir. 1988)).

Plaintiff alleges that "Defendants refused to provide plaintiff equal coverage to that she had prior

to her termination in violation of her rights under . . . ERISA" and that Plaintiff's "exercise of her

rights under an ERISA-governed benefit plans was a determining and/or motivating factor" in the

adverse employment actions Plaintiff suffered. Am. Compl. ¶¶ 36, 80. But such conclusory

allegations cannot show that Plaintiff's loss of benefits protected under ERISA was more than "a

mere consequence of . . . a termination of employment." <u>Wilkins</u>, 10 F. Supp. 3d at 315 (internal

quotation marks omitted). Thus, the Court must dismiss Plaintiff's ERISA retaliation claim.

Unlike Plaintiff's FMLA and ERISA retaliation claims, however, Plaintiff has sufficiently

alleged that she engaged in protected activity for the purposes of her NYSHRL claim. "To state a

retaliation claim under the NYSHRL, a plaintiff must allege that [] she engaged in protected

activity . . . ." <u>Wermann v. Excel Dentistry, P.C.</u>, No. 13-CV-7028, 2014 WL 846723, at *3

(S.D.N.Y. Feb. 25, 2014) (internal quotation marks omitted). "For Plaintiff's conduct to

constitute participation in a protected activity, it is enough that [s]he has made 'informal protests

of discrimination, including making complaints to management.'" <u>Borski v. Staten Island Rapid

Transit</u>, No. 04-CV-3614, 2006 WL 3681142, at *4 (E.D.N.Y. Dec. 11, 2006). Plaintiff alleges

that she "complain[ed] about the discriminatory treatment, contract violations, and hostile work

environment [she] was suffering" along with the "unlawful disclosure of private medical

information" to Bergemann. Am. Compl. ¶ 29. Since Bergemann was the director of human

resources at Crouse Hospital, Plaintiff has plausibly alleged that she engaged in protected

activity. Consequently, her NYSHRL retaliation claim may proceed.

### C. FMLA Interference

In addition to her retaliation claim, Plaintiff also alleges that Crouse Hospital "denied

[Plaintiff] leave" to which she was entitled under the FMLA. Am. Compl. ¶ 68. "To succeed on a

claim of FMLA interference, a plaintiff must establish that the defendant denied or otherwise

interfered with a benefit to which she was entitled under the FMLA." <u>Graziadio v. Culinary Inst.

of Am.</u>, 817 F.3d 415, 424 (2d Cir. 2016). Plaintiff alleges that she "was not provided 12 weeks

of unpaid FMLA leave as the Defendant Crouse Hospital used and applied Plaintiff's sick and vacation time concurrently with a lawfully allowed unpaid FMLA leave." Am. Compl. ¶ 14.

The Court finds persuasive Crouse Hospital's reliance on Divers v. Metro. Jewish Health Sys. in support of its argument that Plaintiff has failed to plausibly allege the hospital interfered in the provision of Plaintiff's FMLA benefits. In Divers, the court observed:

> Divers admits that she was able to use her vacation and sick leave to attend the physical therapy appointments for which she now claims she was denied leave. The FMLA Regulations permit such a substitution of paid leave for FMLA leave, which is usually unpaid. 29 C.F.R. § 825.207(a) ('the employer may require the employee to substitute accrued paid leave for FMLA leave'); 29 C.F.R. § 825.207(c) ('Substitution of paid accrued vacation, personal, or medical/sick leave may be made for any (otherwise) unpaid FMLA leave . . .'). Consequently, Divers cannot succeed in her FMLA claim as a matter of law.

No. 06-CV-6704, 2009 WL 103703, at *21 (E.D.N.Y. Jan. 14, 2009), aff'd, 383 F. App'x 34 (2d Cir. 2010). As noted in Divers, an employer may require an employee to substitute sick leave and vacation time for FMLA leave, 2009 WL 103703, at *21, and "[t]he term substitute means that the paid leave provided by the employer . . . will run concurrently with the unpaid FMLA leave," § 825.207(a). Hence, Plaintiff's "FMLA claim must also fail because, even assuming that the leave request at issue qualified under the FMLA"—an assumption that is not even warranted here given the Court's discussion of Plaintiff's FMLA retaliation claim in Part IVB.2—"the record reveals that [Plaintiff's] request was not denied under FMLA standards." See Divers, 2009 WL 103703, at *21.

In sum, the Court must dismiss Plaintiff's FMLA interference claim.

### D. Breach of Contract

Plaintiff alleges that Crouse Hospital breached its collective bargaining agreement with Plaintiff's former union. Am. Compl. ¶¶ 83–84. As noted by another court in this circuit:

> The Supreme Court has construed [the Labor Management Relations Act ("LMRA")] § 301 as 'a congressional mandate to the federal courts to fashion a body of federal common law to be used to address disputes arising out of labor contracts.' <u>Allis–Chalmers Corp.</u>, 471 U.S. at 209 []. Thus, 'when a state claim alleges a violation of a labor contract, the Supreme Court has held that such claim is preempted by [LMRA § 301] and must instead be resolved by reference to federal law." <u>Vera v. Saks & Co.</u>, 335 F.3d 109, 114 (2d Cir. 2003) . . . .
>
> ***
>
> Where, as here, a plaintiff has not identified any source of her claimed contract rights other than a collective bargaining agreement, plaintiff's claims must be construed as preempted by LMRA § 301. <u>See, e.g.</u>, <u>Avedisian v. Quinnipiac Univ.</u>, 387 F. App'x 59, 62–63 (2d Cir. 2010) (affirming district court's dismissal of plaintiff's breach of contract claim as preempted under LMRA § 301 where there was no other source of plaintiff's rights aside from the collective bargaining agreement in effect between the parties at the time of alleged breach) . . . .

<u>Doyle v. United Airlines, Inc.</u>, 914 F. Supp. 2d 325, 336–37 (E.D.N.Y. 2012). Like in <u>Doyle</u>, Plaintiff's contract rights at issue derive solely from Crouse Hospital's collective-bargaining agreement with Plaintiff's former union. Thus, LMRA § 301 preempts Plaintiff's state law breach-of-contract claim.

"In order to maintain an action under [LMRA] § 301, an employee must 'at least attempt to exhaust exclusive grievance and arbitration procedures established by the [collective] bargaining agreement.'" <u>Campbell v. Kane, Kessler, P.C.</u>, 144 F. App'x 127, 130 (2d Cir. 2005) (quoting <u>Vaca v. Sipes</u>, 386 U.S. 171, 184 (1967)). "Even if plaintiff failed to exhaust the

[collective bargaining agreement's] grievance procedures, however, 'a wrongfully discharged employee may bring an action against [her] employer in the face of a defense based upon the failure to exhaust contractual remedies, provided the employee can prove that the union as bargaining agent breached its duty of fair representation in its handling of the employee's grievance.'" Doyle, 914 F. Supp. 2d at 338 (quoting Vaca, 386 U.S. at 186). "[A]lthough an employee bringing an LMRA § 301 claim may avoid the above-mentioned exhaustion requirement by framing her claim as a 'hybrid' action against both the employer (for breach of the collective bargaining agreement) and the union (for breaching its duty of fair representation) ["hybrid § 301 / DFR claim"], these 'hybrid' claims are subject to a six-month statute of limitations." Id. at 331.

Plaintiff does not allege that she exhausted her breach-of-contract claims under the grievance and arbitration procedures established by Crouse Hospital's collective bargaining agreement with her union. Hence, Plaintiff must style her breach-of-contract claim as a hybrid § 301 / DFR claim subject to the six-month limitations period. Plaintiff cites to precedent that holds an employee may bring a hybrid § 301 / DFR claim against her employer up to the "state statute of limitations applicable to contract breaches," instead of the usual six-month limitations period, "if the collective bargaining agreement does not provide that the grievance and arbitration procedure is the exclusive and final remedy for breach-of-contract claims." Pl.'s Resp. to Crouse Hospital at 15 (citing, inter alia, Daigle v. Gulf State Utils. Col, Local Union No. 2286, 794 F.2d 974, 977 (5th Cir. 1986)). Plaintiff, however, has not cited to precedent for this proposition from this circuit and the Court is unaware of any such precedent. And even if the Court were persuaded to adhere to this proposition, Article 34.1 of the collective bargaining agreement

between Crouse Hospital and Plaintiff's union stipulates that the grievance procedures contained in said agreement is the exclusive and final remedy for breach-of-contract claims: "A grievance shall be any matter involving the interpretation or application of this Agreement and shall be subject to the following procedures . . . The decision of the arbitrator shall be final and binding on each party." Dkt. No. 52-4.[12] Hence, the sixth-month limitations period applies to Plaintiff's breach-of-contract claim.

The six-month limitations period starts running when the union member knew or reasonably should have known that her union breached its duty of fair representation. Kavowras v. N.Y. Times Co., 328 F.3d 50, 55 (2d Cir. 2003). Plaintiff alleges, "Throughout the course of [the events discussed in her Amended Complaint], Plaintiff repeatedly requested assistance from her Union representatives and was denied adequate representation, misled, deliberately stonewalled and/or denied fair representation by said Union." Am. Compl. ¶ 37. Consequently, Plaintiff "knew or reasonably should have known that a breach of the duty of fair representation had occurred" in May and June 2017 when the events at issue in this case occurred, which is over two years ago. See Kavowras, 328 F.3d at 55. Since Plaintiff's claim accrued more than six months before it was filed in this action then the Court dismisses it with prejudice as time barred.

### E.  Individual Defendants

Plaintiff claims that the Individual Defendants each discriminated and retaliated against Plaintiff based on her age in violation of the NYSHRL. Am. Compl. ¶¶ 49–51. Individual Defendants have moved to dismiss Plaintiff's claims against them. Dkt. Nos. 58 ("Bergemann,

---

[12]  Because Plaintiff refers to the collective bargaining agreement in her Amended Complaint, see, e.g., Am. Compl. ¶ 83, then the Court may rely on the agreement when adjudicating Crouse Hospital's Motion to Dismiss, see Rothman, 220 F.3d at 88–89.

Dittrich, Greenia Memorandum") at 3; 71 ("DiCarlo Memorandum") at 1–2. As another court in

this circuit has observed:

> An individual may be liable for discrimination in violation of the NYHRL as either an employer, N.Y. Exec. Law § 296(1), or as an 'aider and abettor,' id. § 296(6). Section 296(1) of the New York Executive Law prohibits an "employer" from discriminating based upon the ['age'] of an employee or job applicant. N.Y. Exec. Law § 296(1)(a). Individuals are liable as employers under Section 296(1) only if they have 'an ownership interest,' or if they 'themselves, have the authority to hire and fire employees.' Gentile v. Town of Huntington, 288 F. Supp. 2d 316, 321 (E.D.N.Y. 2003) (quoting Tomka v. Seiler Corp., 66 F.3d 1295, 1317 (1995), abrogated on other grounds by Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998)); see also Patrowich v. Chem. Bank, 63 N.Y.2d 541, 542, 483 N.Y.S.2d 659, 473 N.E.2d 11 (1984) (per curiam) (holding that an individual is not liable under the NYHRL as an employer unless he is 'shown to have any ownership interest or any power to do more than carry out personnel decisions made by others').

Edwards v. Jericho Union Free Sch. Dist., 904 F. Supp. 2d 294, 304 (E.D.N.Y. 2012) (internal

quotation marks omitted).

Plaintiff alleges that the Individual Defendants are employers for the purposes of the

NYSHRL "because they had the authority to do more than mere [sic] carry out personnel

decisions made by others." Am. Compl. ¶ 49. But Plaintiff has not alleged that any of the

Individual Defendants has "the power or authority to hire or fire" Plaintiff. Edwards, 904 F.

Supp. 2d at 304. Nor has Plaintiff alleged that the Individual Defendants have any ownership

interest in Crouse Hospital. See id. Accordingly, the Court concludes the Individual Defendants

are not liable under the NYSHRL as employers.

"Section 296(6), however, provides a broader sense of personal liability under the

NYHRL. That provision makes it unlawful for any person to aid, abet, incite, compel or coerce

the doing of any of the acts forbidden under this article, or to attempt to do so. An individual can be liable under Section 296(6) so long as he actually participates in the conduct giving rise to a discrimination or retaliation claim." Id. (internal citations and quotation marks omitted); see also Delisi v. Nat'l Ass'n of Prof'l Women, Inc., 48 F. Supp. 3d 492, 496 (E.D.N.Y. 2014). "Liability as an aider and abettor under § 296(6) can be established only when liability has first been established as to the employer or another person." Setelius v. Nat'l Grid Elec. Servs. LLC, No. 11-CV-5528, 2014 WL 4773975, at *34 (E.D.N.Y. Sept. 24, 2014) (citing Redd v. N.Y.S. Div. of Parole, 923 F. Supp. 2d 371, 392 (E.D.N.Y. 2012)). Plaintiff has plausibly alleged her employer, Crouse Hospital, discriminated and retaliated against her. Thus, the Court will consider whether Plaintiff has adequately plead the Individual Defendants aided and abetted the Hospital in discriminating and retaliating against Plaintiff.

Plaintiff has sufficiently alleged that Bergemann "actually participate[d] in the conduct giving rise" to her discrimination and retaliation claims against Crouse Hospital. Edwards, 904 F. Supp. 2d at 304 (internal citations and quotation marks omitted). Plaintiff alleges that she "complain[ed] about the discriminatory treatment, contract violations, and hostile work environment [she] was suffering" along with the "unlawful disclosure of private medical information" to Bergemann. Am. Compl. ¶ 29. Yet Bergemann did not investigate Plaintiff's complaints. Id. "[C]ourts have found that a failure to investigate can constitute 'active participation' to support an 'aiding and abetting' claim." Delisi, 48 F. Supp. 3d at 496 (citing cases). That Bergemann actually participated in the conduct giving rise to Plaintiff's age discrimination claim is further illustrated by the fact Bergemann urged Plaintiff to "take Social

Security Disability, retire, and 'apply for Medicare.'" Am. Compl. ¶ 19. Thus, Plaintiff's claim against Bergemann may proceed.

The Court finds that Plaintiff has plausibly alleged DiCarlo, like Bergemann, aided and abetted Crouse Hospital in discriminating against Plaintiff. Plaintiff alleges that on May 4, 2017, DiCarlo "first advised the float . . . position description was being eliminated, not the position." Am. Compl. ¶ 17. Yet a week later "DiCarlo appeared hostile and upset with Plaintiff and announced, admitting to her that she had eliminated Plaintiff's position, and she would be meeting with HR to determine 'bidding' outside Plaintiff's department." Id. ¶ 28. Once DiCarlo notified Plaintiff that DiCarlo had in fact eliminated Plaintiff's position, Plaintiff then had to "bump" into a new position that "compromised her job security and schedule and seniority" and "subject[ed] Plaintiff to discrimination, humiliation and disparagement." Id. ¶¶ 18, 28, 34. Plaintiff's "non-disabled, with less seniority, and younger co-workers were not displaced or required to 'bump'" even though they lost their float job title as well. Id. ¶¶ 17, 34. Hence, Plaintiff's claim against DiCarlo may proceed.

Plaintiff has also plausibly pled that Greenia "actually participate[d] in the conduct giving rise to" Plaintiff's discrimination and retaliation claims against Crouse Hospital. See Edwards, 904 F. Supp. 2d at 304 (internal citations and quotation marks omitted). As discussed in Part IVA.1.c., Greenia contributed to the creation of a hostile work environment by "not providing work assignments to Plaintiff while providing such assignments to her [younger, non-disabled] co-workers in her place." Id. ¶ 27. Such contribution suggests Greenia aided or abetted in Crouse Hospital's discrimination against Plaintiff. See Feingold v. New York, 366 F.3d 138, 158 (2d Cir. 2004) (concluding a plaintiff's aiding and abetting claim under the NYSHRL should survive

summary judgment because the defendant had "participated in creating a hostile work environment"). Consequently, Plaintiff's claim against Greenia may proceed.

Finally, Plaintiff has adequately alleged that Dittrich aided and abetted Crouse Hospital in its discrimination and retaliation against Plaintiff. Plaintiff alleges that Dittrich disciplined Plaintiff for "disrespecting Bergemann when she complained of his" discriminatory statements about Plaintiff's age, his failure to investigate Plaintiff's claims of "discriminatory treatment, contract violations, and hostile work environment," and his "unlawful disclosure of Plaintiff's private medical information." Am. Compl. ¶¶ 19, 29. Additionally, Plaintiff alleges Dittrich informed Plaintiff that her float position had been eliminated and she "had to 'bump' [into a new position] when her [younger, non-disabled] co-workers did not." Id. ¶ 34. In sum, Plaintiff's claim against Dittrich may proceed as well.

## V.    CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Crouse Hospital's Motion to Dismiss (Dkt. No. 53) is **GRANTED in part**. Plaintiff's (1) FMLA discrimination claim; (2) discrimination claims brought under the theory that Crouse Hospital subjected Plaintiff to actionable transfer; (3) FMLA and ERISA retaliation claims; and (4) FMLA interference claim are **dismissed without prejudice**. Plaintiff's (1) ADA and ADEA retaliation claims; and (2) breach of contract claim are **dismissed with prejudice**; and it is further

**ORDERED**, that Crouse Hospital's Motion to Dismiss (Dkt. No. 53) is otherwise **DENIED**; and it is further

**ORDERED**, that Bergemann, Dittrich, and Greenia's Motion to Dismiss (Dkt. No. 57) is **GRANTED in part**. Plaintiff's claims that Bergemann, Dittrich, and Greenia discriminated against Plaintiff as employers under the NYSHRL § 296(1) are **dismissed without prejudice**; and it is further

**ORDERED**, that Bergemann, Dittrich, and Greenia's Motion to Dismiss (Dkt. No. 57) is otherwise **DENIED**; and it is further

**ORDERED**, that DiCarlo's Motion to Dismiss (Dkt. No. 70) is **GRANTED in part**. Plaintiff's claim that DiCarlo discriminated against Plaintiff as an employer under the NYSHRL is **dismissed without prejudice**; and it is further

**ORDERED**, that DiCarlo's Motion to Dismiss (Dkt. No. 70) is otherwise **DENIED**; and it is further

**ORDERED**, that Plaintiff may move to replead all of her claims dismissed without prejudice within **sixty days** of the date of this Memorandum-Decision and Order; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:      November 26, 2019
            Albany, New York


Lawrence E. Kahn
U.S. District Judge