UNITED STATES DISTRICT COURT
<u>NORTHERN DISTRICT OF NEW YORK</u>

LINDA LOU BUCZAKOWSKI,

                         Plaintiff,

   -against-                                       5:18-CV-0330 (LEK/ML)

CROUSE HEALTH HOSPITAL, INC.,
*et al.*,

                         Defendants.

## MEMORANDUM-DECISION AND ORDER

**I.     INTRODUCTION**

Plaintiff Linda Lou Buczakowski commenced this action against Crouse Health Hospital Inc. ("Crouse" or the "Hospital"), John Bergemann, Lisa Dittrich, Catherine Greenia, and Dorothy DiCarlo (collectively, "Defendants"), alleging civil rights violations under the Age Discrimination in Employment Act ("ADEA"), the Americans with Disabilities Act ("ADA"), and the New York State Human Rights Law ("NYSHRL"). Dkt. No. 49 ("Amended Complaint"). On May 24, 2021, Defendants filed a Motion for Summary Judgment, Dkt. No. 125, which the Court granted in part and denied in part on February 7, 2022, Dkt. No. 139 ("February 2022 Order"). In the February 2022 Order, the Court requested supplemental briefing from the parties on Plaintiff's failure to accommodate claims under the ADA and the NYSHRL. <u>Id.</u> at 14–16. Plaintiff filed her supplemental brief on March 9, 2022, Dkt. No. 140 ("Plaintiff's Supplemental Brief"), and Defendants responded on March 23, 2022, Dkt. No. 141 ("Defendants' Supplemental Brief"). For the reasons set forth below, the Court denies summary judgment to Defendants on Plaintiff's failure to accommodate claims against the Hospital.

## II.    BACKGROUND

### A.  Factual History

Defendants' Statement of Material Facts, Dkt. No. 125-1 ("Defs.' SMF"), Plaintiff's Response to Defendants' Statement of Material Facts, Dkt. No. 132-32 ("Pl.'s Resp. to Defs.' SMF"), and Plaintiff's Additional Statement of Material Facts, Dkt. No. 132-33 ("Pl.'s Add'l SMF"), are recounted in detail in the Court's February 2022 Order, familiarity with which is assumed. February 2022 Order at 2–12.

### B.  Procedural History

Plaintiff first commenced suit on March 16, 2018. Dkt. No. 1. Plaintiff filed her Amended Complaint on July 5, 2019. Am. Compl. After Defendants filed a motion to dismiss for failure to state a claim, Dkt. No. 52, the Court allowed several of Plaintiff's claims to proceed, including her failure to accommodate claims under the ADA and the NYSHRL. Dkt. No. 72 ("July 2019 Order") at 9–11. In allowing the failure to accommodate claims to proceed, the Court observed that in her Amended Complaint, Plaintiff alleged that the Hospital told her in June 2017 that she "would not have time available for her medical appointments" in her new position as a patient account representative "and would be subject to disciplinary action if she missed work as a result" of taking medical leave. Id. at 10 (citing Am. Compl. ¶ 35). Since a leave of absence can be a reasonable accommodation under the ADA and the NYSHRL, the Court concluded that Plaintiff had "plausibly alleged . . . that Crouse Hospital could have provided reasonable accommodations to ameliorate her disability, and that the Hospital refused to do so." July 2019 Order at 10–11 (citing Wenc v. New London Bd. of Educ., No. 14-CV-0840, 2016 WL 4410061, at *13 (D. Conn. Aug. 16, 2016); Fernandez v. Windmill Distrib. Co., 159 F. Supp. 3d 351, 366 (S.D.N.Y. 2016)).

2

After the parties completed discovery, Defendants then filed their Motion for Summary Judgment on May 24, 2021, see Dkt. No. 125, which the Court granted in part and denied in part on February 7, 2022, see February 2022 Order. Specifically, the Court granted summary judgment to Defendants on Plaintiff's hostile work environment and constructive discharge claims, but denied summary judgment to Defendants on Plaintiff's NYSHRL retaliation and NYSHRL individual liability claims. Id. at 36. The Court also denied summary judgment to Defendants on Plaintiff's failure to accommodate claims, but with leave to renew in the form of supplemental briefing on those claims. Id. The Court requested this supplemental briefing principally because, in their initial papers, both "parties focused on whether Plaintiff [had actually] submitted a request for an accommodation, but neither side discussed Brady [v. Wal-Mart Stores, Inc., 531 F.3d 127, 135 (2d Cir. 2008)]," which held that "an employer has a duty reasonably to accommodate an employee's disability if the disability is obvious—which is to say, if the employer knew or reasonably should have known that the employee was disabled." Id.; see also February 2022 Order at 14–16. In particular, when "the disability is obviously known to the employer" but the employee did not ask for an accommodation, the Second Circuit stated in Brady that "[a] requirement that such an employee ask for accommodation would be tantamount to nullifying the statutory mandate of accommodation for one entire class of disabled (as that term is used in the ADA) employees." 531 F.3d at 135. This Court reasoned that it "cannot rule on summary judgment [with respect to Plaintiff's failure to accommodate claims] until both sides fully brief Brady's impact on [them]." February 2022 Order at 16.

Plaintiff filed her supplemental brief on March 9, 2022, Pl.'s Suppl. Br., and Defendants responded on March 23, 2022, Defs.' Suppl. Br.

### C. The Parties' Arguments

In her supplemental briefing, Plaintiff claims that Brady applies to the present case because (1) Defendants knew of her disability—i.e., her back pain, cancer, and chemotherapy treatments, and (2) Defendants failed to engage in the interactive process as required by Brady to accommodate time off for future medical appointments related to those conditions. Pl.'s Suppl. Br. at 4. Plaintiff adds that "[t]o the extent that Defendants may argue that such a process had begun and was abandoned by Plaintiff [by leaving her employment with the Hospital], the facts, viewed in a light most favorable to Plaintiff, present question for the fact finder." Id. at 6. Plaintiff draws particular attention to her claim that "Defendants told Plaintiff, when she asked about her time off requests in her new position [for appointments regarding her medical conditions], that **it** (sic) **would not be approved**." Id. at 7 (emphasis in original).

In response, Defendants argue that they did in fact engage in the required interactive process with Plaintiff, and that prior to Plaintiff leaving her job at the Hospital, her supervisor, Greenia, always granted her requests for time off, and routinely allowed for flexible scheduling to accommodate any of her medical appointments. Defs.' Suppl. Br. at 2 (citing Defs.' SMF ¶ 17; Dkt. No. 132-3 ("Buczakowski Deposition") at 81:2–9). Defendants also highlight Plaintiff's admission that Amber Irving, a member of the Hospital's management, told Plaintiff that any requests for time off would be governed "subject to the union contract rules," Defs.' Suppl. Br. at 2 (citing Pl.'s Suppl. Br. at 3), which "specifically provide that 'leaves of absences for medical reasons **shall not be denied.**'" Defs.' Suppl. Br. at 2–3 (quoting Pl.'s Suppl. Br. at 3) (emphasis in original). Defendants further argue Plaintiff was never "actually denied the accommodation upon which she bases her claim" before she left her employment at the Hospital. Defs.' Suppl. Br. at 3. In addition, Defendants posit that Brady is inapplicable because "an employer [only] has

4

a duty to accommodate employees' 'known' limitations," Defs.' Suppl. Br. at 3 (quoting Brady, 531 F.3d at 134 (citing 42 U.S.C. § 12112(b)(5)(A))), and that "Defendants could only have accommodated the limitation at issue—unavailability for work due to a medical appointment—if Plaintiff had made the request for time off," Defs.' Suppl. Br. at 4.

### III.     LEGAL STANDARD

Federal Rule of Civil Procedure 56 instructs courts to grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law," and a dispute is "'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Thus, while "[f]actual disputes that are irrelevant or unnecessary" will not preclude summary judgment, "summary judgment will not lie if ... the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.; see also Taggart v. Time, Inc., 924 F.2d 43, 46 (2d Cir. 1991) ("Only when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted.").

The party seeking summary judgment bears the burden of informing the court of the basis for the motion and identifying those portions of the record that the moving party claims will demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Similarly, a party is entitled to summary judgment when the nonmoving party has failed "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

In attempting to repel a motion for summary judgment after the moving party has met its initial burden, the nonmoving party "must do more than simply show that there is some

metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). At the same time, a court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 150 (2000). Thus, a court's duty in reviewing a motion for summary judgment is "carefully limited" to finding genuine disputes of fact, "not to deciding them." <u>Gallo v. Prudential Residential Servs., Ltd. P'ship</u>, 22 F.3d 1219, 1224 (2d Cir. 1994).

## IV. DISCUSSION

The Court finds it prudent to begin its discussion with a summary of the Second Circuit's <u>Brady</u> decision given its importance to the parties' supplemental briefing.

### A. The Second Circuit's Decision in <u>Brady</u>

The plaintiff in <u>Brady</u> suffered from cerebral palsy. 531 F.3d at 130. The plaintiff, his parents, and another witness all testified in some form throughout the litigation that the plaintiff's disability was noticeable upon looking at him and affected nearly every aspect of his life. <u>See</u> <u>id.</u> "[A]fter having worked for about two years in a local pharmacy receiving prescriptions and dispensing prescription drugs without incident, [he then] applied for a [part-time] job in the pharmacy department of [a] Wal-Mart store . . . ." <u>Id.</u> On the job application, the plaintiff "marked that he had the ability to perform the listed tasks [of the job] 'either with or without a reasonable accommodation.'" <u>Id.</u>

Almost immediately after beginning work, the plaintiff "perceived" that his supervisor "was unhappy with his performance" and made comments about the speed at which he was performing. <u>Id.</u> at 130–31. Within his first week, the plaintiff was then removed from his job as a pharmacy assistant and transferred to the parking lot where he would collect carts and garbage. <u>Id.</u> at 131. After meeting with the store manager and expressing his dissatisfaction with the

parking lot job (and the possibility of having been subjected to disability discrimination), the plaintiff was then transferred to the food department. Id. at 132. After the plaintiff "was given a work schedule for the next week that conflicted with his community college schedule, a schedule he had noted on Wal-Mart's availability forms," Brady quit and "brought [] suit, alleging a number of counts of discrimination under the ADA and [NYSHRL]," including a "failing reasonably to accommodate his disability" claim. Id. At trial, the jury found that "Wal-Mart failed reasonably to accommodate him . . . ." Id.

On appeal before the Second Circuit, Wal-Mart argued that the district court should have granted it judgment as a matter of law on the plaintiff's failure to accommodate claim "because [plaintiff] never requested an accommodation and testified that he did not think he needed one." Id. at 134. In rejecting this argument, the Second Circuit recognized that "[g]*enerally*, it is the responsibility of the individual with a disability to inform the employer that an accommodation is needed," id. at 135 (emphasis in original) (quoting Graves v. Finch Pruyn & Co., 457 F.3d 181, 184 (2d Cir. 2006)), but also explained that the "'general[]' rule announced in Graves might be inapplicable." Brady, 531 F.3d at 130. Accordingly, the Second Circuit held in Brady that "an employer has a duty reasonably to accommodate an employee's disability if the disability is obvious—which is to say, if the employer knew *or reasonably should have known* that the employee was disabled." Id. at 135 (emphasis added). Therefore, even though the plaintiff did not make a specific accommodation request, and even testified at one point that he did not think he needed one, the employer was still required to "engage in an interactive process with [him] and . . . work together [with him] to assess whether [his] disability c[ould] be reasonably accommodated." Id. (cleaned up). The Second Circuit reasoned: "A requirement that such an employee ask for accommodation would be tantamount to nullifying the statutory mandate of

7

accommodation for one entire class of disabled (as that term is used in the ADA) employees." Id. Failure to engage in the interactive process regarding accommodations, without ever denying a specific accommodation request, was enough to establish liability for the plaintiff's failure to accommodate claim. See id.

### B. The Interactive Process Since Brady

Since Brady, courts have continued to provide guidance on how to evaluate parties' failure to engage in the interactive process. In considering a claim regarding a breakdown in the interactive process, "'courts should attempt to isolate the cause of the breakdown [of the interactive process] and then assign responsibility.'" Zito v. Donahoe, 915 F. Supp. 2d 440, 446 (S.D.N.Y. 2012) (quoting Beck v. Univ. of Wis. Bd. of Regents, 75 F.3d 1130, 1135-36 (7th Cir. 1996)). "An employee who is responsible for the breakdown of that interactive process may not recover for a failure to accommodate." Nugent v. St. Lukes-Roosevelt Hosp. Ctr., 303 Fed. App'x. 943, 946 (2d Cir. 2008); accord Berger v. N.Y. City Police Dept., 304 F. Supp. 3d 360, 371 (S.D.N.Y. 2018) ("[I]f the employee causes the interactive process to collapse, an employer will not be liable for failing to make an accommodation under the ADA."). On the other hand, if it were "the defendant's policies [that] foreclosed the only reasonable accommodation that could have assisted plaintiffs, and . . . [the] defendant's statements effectively indicated that the [defendant] had no intention of engaging in the interactive process in good faith with [the plaintiff]," then an employee may still recover. Sivio v. Village Care Max, 436 F. Supp. 3d 778, 795 (S.D.N.Y. 2020) (internal quotation marks omitted). Ultimately, if "a reasonable jury could conclude either that [the employee] did not abandon the interactive process, or that she abandoned the interactive process after [the employer] had already improperly denied a

reasonable accommodation, her failure to accommodate claim survives summary judgment." Id. at 796.

### C. Application to the Present Case

Here, it is uncontested that Defendants knew of Plaintiff's back pain, cancer, and chemotherapy treatments during the period pertinent to Plaintiff's claims. Defs.' SMF ¶¶ 13–14; Resp. to Defs.' SMF ¶¶ 13–14. Plaintiff and Defendants also agree that, prior to Plaintiff leaving her employment at the Hospital in June 2017, Defendants granted all of Plaintiff's "time off requests for her medical appointments and allowed her to come in early or leave late to make up time." Defs.' SMF ¶ 17; Resp. to Defs.' SMF ¶ 17. Therefore, since Plaintiff agrees that Defendants never "denied [her] a reasonable accommodation" in the past, see Sivio, 436 F. Supp. 3d at 796, Plaintiff's failure to accommodate claim may only survive summary judgment if she can show a genuine dispute over which party abandoned the interactive process as required under the ADA and the NYSHRL first, id. The relevant inquiry therefore becomes whether Plaintiff has shown a genuine dispute over (1) whether Defendants' "policies foreclosed the only reasonable accommodation that could have assisted" Plaintiff, and (2) whether Defendants' "statements effectively indicated that [they] had no intention of engaging in the interactive process in good faith with" Plaintiff. Id. at 795.

Defendants argue that there is no genuine dispute for trial regarding Defendants' policies because Plaintiff has already admitted that Defendants' policies, as manifested in the union contract rules, "specifically provide that 'leaves of absences for medical reasons **shall not be denied.**'" Defs.' Suppl. Br. at 2–3 (quoting Pl.'s Suppl. Br. at 3) (emphasis in original). Moreover, given that "Defendants had granted all prior requests for time off for treatment," Defs.' Suppl. Br. at 7, Defendants posit that "Plaintiff could not have had an objectively

9

reasonable belief that the interactive process was foreclosed [by Defendants]." Id. The import of their argument is that no reasonable jury could conclude that Defendants—and not Plaintiff— were responsible for the breakdown in the interactive process regarding future time off requests when Plaintiff left her employment at the Hospital in June 2017.

Plaintiff, however, does "more than simply show that there is some metaphysical doubt," Matsushita, 475 U.S. at 586, as to who foreclosed the interactive process. While Defendants characterize Plaintiff's belief that she would be denied time off in the future as "subjective," "unreasonable," and in conflict with other uncontested facts in the record, Defendants largely dismiss Plaintiff's testimony that Amber Irving, a member of the Defendant Hospital's management, "agreed with [a non-party union representative] that there would be no opportunity for Plaintiff to take any time off based on her seniority in the new department." Pl.'s Add'l SMF ¶ 240. Nor do Defendants fully grapple with Plaintiff's testimony that Irving conveyed the following to her: "If you ask time off and—it won't be approved. You can take it, but it will be unapproved, and it will be subject to the union contract rules, *the disciplinary rules*." Id. (emphasis added). Defendants repeatedly draw attention to Irving's reference to the "union contract rules," but gloss over Irving's reference to possible discipline.

While the Court agrees that it is uncontested that the union contract rules provide that leaves of absences for medical reasons shall not be denied, what exactly transpired during Irving's meeting with Plaintiff remains contested. Irving's assertion that Plaintiff's possible requests for time off "won't be approved" and Irving's reference to "the disciplinary rules" appear to have left Plaintiff with the impression that asking for time off in the future might subject her to termination. Pl.'s Suppl. Br. at 3. Whether Plaintiff's recollection of that conversation is credible, or the inferences she drew from it are reasonable based on specific

provisions in the union contract and the Hospital's past practice, are not issues the Court should decide at this stage in the litigation, because the Court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. Reeves, 530 U.S. at 150.

It is possible, at trial, that a jury will ultimately agree with Defendants that the Hospital's policies had not changed to "foreclose" the possibility of time off for Plaintiff's future medical appointments. See Sivio, 436 F. Supp. 3d at 795. A jury might also agree with Defendants that nothing in Irving's conversation with Plaintiff "effectively indicated that the [Hospital] had no intention of engaging in the interactive process in good faith with" Plaintiff in the future. See id. However, a jury may agree with Plaintiff, and conclude that Irving's statements indicate that her employer abandoned the interactive process by foreclosing a reasonable accommodation for Plaintiff. See id. In resolving this Motion, however, the court's duty is "carefully limited" to finding genuine disputes of fact, "not to deciding them." Gallo, 22 F.3d at 1224. Accordingly, the Court denies Defendants' Motion for Summary Judgment with respect Plaintiff's failure to accommodate claims against the Hospital.

V.   **CONCLUSION**

Accordingly, it is hereby:

**ORDERED**, that with respect to Plaintiff's failure to accommodate claims against the Hospital, Defendants' Motion for Summary Judgment (Dkt. No. 125) is **DENIED**; and it is further

**ORDERED**, that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:   December 13, 2022
         Albany, New York

LAWRENCE E. KAHN
United States District Judge